Bennett v. Fail & Patterson.

## BENNETT *vs.* FAIL & PATTERSON.

1. Where the purchaser of slaves, on discovering their unsoundness, wrote to the vendor, informing him of that fact, and tendering them back ; and the vendor, in reply, objected that the offer to rescind was made too late, and referred the purchaser to his warranty for indemnity : *Held*, that these letters did not amount to a rescission of the contract, when it was shown that the purchaser had afterwards brought suit on the warranty.

2. If the vendor refuses to accept the property when the purchaser offers to return it, this will dispense with a more formal tender ; but the purchaser, if he still retains the property in his possession, must yield it up on the reasonable demand of the vendor, and his refusal to surrender on such demand, even after suit brought, will destroy the effect of his previous tender.

3. Although the opinion of a physician as to the length of time a disease has existed, predicated upon present symptoms, is not equal to positive proof of the fact of its existence ; yet, where he testifies to the existence of certain diseases from a personal examination, upon which he founds his opinion as to the length of time they have existed, it is error to instruct the jury, " that the testimony of physicians is matter of opinion merely."

4. On a question of the soundness of a slave, a witness may testify that " she *appeared to be healthy ;*" and if the party against whom the evidence is offer-

ed desires to ascertain what the appearances were which the witness denominated healthy, he must elicit such proof on cross-examination.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

ASSUMPSIT by Fail & Patterson against Bowen Bennett, on a promissory note for $2,100, which was shown to have been given for the purchase money of three slaves sold by plaintiffs to defendant; pleas, *non assumpsit*, fraud, failure of consideration, and want of consideration.

On the trial, after the plaintiffs had offered in evidence the note declared on, the defendant proved that it was given for the purchase money of three slaves—Mary Jane, Nancy, and Judy—sold by plaintiffs to him at one time on 28th January, 1852, and as one entire contract, and then introduced the bill of sale, containing warranties of soundness and title. The circumstances under which the sale was made, as deposed to by the witnesses, are stated at length in the bill of exceptions, but they present no point for consideration in this court. On the part of defendant, Doctors Riddle, Howell, Robbins, and Hutchinson were examined as witnesses, and they testified, substantially, that they had examined each one of the negroes a few weeks after they had went into the defendant's possession; that Mary Jane had syphilis, Nancy chronic gonorrhea, and Judy umbilical hernia; that their professional opinion, founded on their personal examination of the slaves, was, that each of these diseases must have existed from a period anterior to the sale to the defendants; and that the slaves, at the time of their examination, stated such to be the fact. On the part of the plaintiffs, Dr. Matheson testified, that he examined the slaves about six weeks after the sale, at the request of the plaintiffs, and his professional opinion was, that Mary Jane and Nancy had not been diseased more than three weeks, and that Judy's disease was not a bad case of hernia, but was curable, and did not greatly impair her value; and Doctors Troy and Bythwood, who were examined for the plaintiffs, stated that they did not concur with Dr. Riddle, from the symptoms which he described, as to the character and degree of Mary Jane's disease. There was other evidence on the question of unsoundness, which it is unnecessary to detail.

" The plaintiffs offered to prove, also, by one Quartemus, that within a few weeks past, and since the last term of this court, he saw the.slave Mary Jane at the house of one J. H. Campbell in this county; and that she appeared to be healthy. The witness was a mechanic, who had been working on said Campbell's house. The defendant objected to the introduction of witness for that purpose, but the court overruled the objection, and the witness testified to the facts stated ; and to this the defendant excepted."

The defendant offered in evidence a letter written by himself to plaintiffs, which was produced by them on notice, and also their reply thereto, of which the following are copies :—

" Mr. D. A. Patterson & J. Fail:—The man you sent the note to me, that was given for the negroes, the next week after I purchased them, I told him to tell you that the negroes were unsound. I apprise you that one of them is under the doctor's attention, and he declares her unsoundness of some years' standing. I do not believe he can cure her. I tender you the negroes back before more expense occurs.

" March 1, 1852.    .    " Bowen Bennett."

" Camden, March 1, 1852.

" Mr. Bowen Bennett : Dear Sir—We received your note, stating that the negroes we sold you were not sound. You should have tendered the negroes sooner ; but if you can prove that there was any latent or hidden disease, you can certainly make us accountable. We have a bill of sale, that will make us safe. You should have delivered the negroes before this late hour.

" Yours,    D. A. W. Patterson & J. Fail."

The defendant introduced one Burns as a witness, who testified, " that on the 14th or 15th February, 1852, he was sent by plaintiff Patterson, with the note, to Bowen Bennett, to collect it, or get a payment upon it ; that Patterson told him to get the money on the note, or, if he could not get the whole of it, to get him to pay four hundred dollars on it, as he was pressed for money, but that if he would do neither, then to offer to take back the negroes, and if Bennett would not do that, then to stay and board it out with him ; that when Bennett refused to pay the money, he did offer to take the negroes back ; that he made this offer but once, and did not press it,

and he could not state what reply Bennett made at that time to the proposition ; that Bennett refused to pay the note, and gave as a reason for not doing it that the negroes were unsound, and told him to tell Patterson so, and that he would not pay the note, and for him (Patterson) to come and take his negroes away. He stated, also, that he communicated this to Patterson on the same day, who was then within about six miles of Bennett's residence surveying, and that Patterson did not deny the unsoundness. It was further in proof, that the plaintiffs and the defendant lived from twelve to fifteen miles apart, and that the Alabama river intervened.

" The plaintiffs, in reply, offered to show by one Kane, that after this suit was brought and pending, and another one by defendant on plaintiffs' warranty, plaintiffs offered to give defendant the note sued on, and to take the negroes back, and that defendant refused to do so. Defendant objected to this, but the court allowed the witness to be examined, and he so testified ; and defendant excepted.

" The plaintiffs next offered in evidence the record of the undetermined suit of defendant against them on their warranty, and the defendant objected ; but the court overruled the objection, and allowed the record to go to the jury, and the defendant excepted.

" The foregoing evidence being before the jury, the court, among other things, charged the jury, that the foregoing letters in proof did not show a rescission of the contract of purchase ; to which charge the defendant excepted.

" The court charged the jury, also, that the testimony of physicians was matter of opinion merely, but that they should be controlled by the weight of evidence, and the superior conviction it made upon their minds ; to which charge, also, the defendant excepted."

The defendant asked three charges, which were severally refused, and to each refusal he excepted. They were—

" 1. That defendant's letter to plaintiffs, dated March 1, 1852, and plaintiffs' reply of the same date, taken together, make a rescission of the contract, if defendant's said letter and tender was written and made within a reasonable time, and the slaves were unsound at the time of the purchase, and plaintiffs knew it.

" 2. That if the note sued on was procured by fraud, plaintiffs cannot recover, whether there was an offer to return the slaves or not.

" 3. That no offer to re-deliver the slaves was necessary, after plaintiffs' refusal on the first of March, 1852, to receive them back on defendant's tender by letter, as the law does not require an unnecessary act to be done."

The rulings of the court on the evidence, the charges given, and the refusals to charge as requested, are now assigned for error.

GEO. W. GAYLE and J. H. CAMPBELL, for the appellant:

1. On the question of fraud in the original contract, see Kennedy v. Kennedy, 2 Ala. 571; Huckabee v. Albritton, 10 ib. 657; Milton v. Rowland, 11 ib. 732; Swift v. Fitzhugh, 9 Port. 39; Forrest v. Camp, 16 Ala. 642; Carter v. Castleberry, 5 ib.; Stokes v. Jones, 21 ib. 731; 5 Cowen's R. 67; 1 Smedes & M. Ch. 375; 4 Coke's R. 786; 15 Johns. 121; Andrews v. Montgomery, 19 ib. 164; Ross v. Lane, 3 Smedes & M. 695; Barringer v. Nesbit, 1 ib. 22; Dill v. Camp, 22 Ala. 249.

2. That the facts showed a rescission of the contract, see Burnett v. Stanton & Pollard, 2 Ala. R. 182; Duckworth v. Johnson, 8 ib. 309; Whitehurst v. Boyd, 8 ib. 375; Martin v. Chapman, 6 Port. 344; Magee v. Billingsley, 3 Ala. 679; Dill v. Camp, 22 ib. 249; Milton v. Rowland, 11 ib. 732.

3. That the court erred in its charge upon the testimony of the physicians, see 7 Wend. 78; 1 McNally on Evidence, pp. 329-35; 8 Mass. Rep. 371; 9 ib. 225; 5 Miller's R. 275; Washington v. Cole, 6 Ala. 212; Patton & Burgen v. Rambo, 20 ib. 487; Tullis v. Kidd, 12 ib. 648; 1 Phil. Ev. 290; 1 Greene's R. 232.

4. That the court erred in admitting the testimony of Kane, see Jackson *ex dem.* Calden v. Rich, 7 Johns. 193.

WM. M. MURPHY, *contra*; cited the following authorities :

1. To show that there was no rescission of the contract, Burnett v. Stanton & Pollard, 2 Ala. 181; Barton v. Stewart, 3 Wend. 236; Dill v. Camp, 22 Ala. 259.

2. To show that the charge of the court was correct, which

asserted that the testimony of physicians was matter of opinion merely, 1 Greenleaf's Ev., §§ 440, 441, and notes.

CHILTON, C. J.—There was no error in the charge, that the letters which passed between the parties did not show a rescission of the contract. This charge must be considered with reference to the proof shown in the record; and it is clear from this, that whatever may have been Bennett's inclination when he wrote to the appellees, informing them of the unsoundness of the slaves, and saying that he tendered them back, the appellees did not assent to any rescission, but insisted on the contract, referring Bennett, for his indemnity, to their warranty; and Bennett's subsequent conduct shows that he sought this mode of redress. The record shows that he brought his action upon the warranty, thereby affirming the contract.

But again: A tender, to be available, must be continuous; that is to say, if a party says he tenders property, and the other, to whom the tender is made, says he will not accept, this refusal to accept may dispense with a more formal tender; but if the party tendering it retains it in his possession, he must yield it up on the reasonable demand of the other. He keeps it as the property of that other, having by his tender disaffirmed the contract, and thereby having vested the property in the vendor, retaining it, it may be, from considerations of humanity, as the vendor's unwilling bailee. If, however, upon the demand of the vendor, who has never consented to a rescission, the purchaser refuses to surrender it, he affirms the contract, and destroys the effect of his previous tender; and we see no reason why this affirmance may not be made as well after suit brought as before. The effect of such affirmance would be, to let the contract stand,—the property consequently vests in the purchaser, who has his remedy upon the contract of warranty, either express or implied, by way of abatement in the price, when sued upon the notes, or by a direct suit upon the warranty.

As to the second charge: When considered with reference to the proof, we feel satisfied it was calculated to mislead, and to induce the jury to underrate and disparage the testimony of the physicians. Several of them, from actual exam-

ination, deposed to the *fact*, that the slaves had certain diseases—syphilis, gonorrhea, umbilical hernia, &c.—and described the presence of the symptoms which attend these diseases. When, therefore, the court told the jury, " that the testimony of physicians was matter of opinion merely," without discriminating between that portion of their proof which went to facts, and that which was really but matter of opinion, the jury might well have been induced to conclude their whole evidence should be treated as matter of opinion merely ; they were at least liable more readily to confound the evidence of facts with that of mere opinion, and thereby to prejudice the appellant. That the opinion of medical gentlemen, as to the length of time a disease may have existed, from the symptoms then present, is not equal to positive proof of the *fact* of its existence, is certainly true. The symptoms may, and doubtless often do, mislead them ; and hence such conclusions are mere matter of opinion. This was probably the meaning the judge intended should be given to the charge in question ; but the language employed justifies a very different conclusion. He was charging, of course, with reference to the proof in the cause, and the jury are told, not that the opinion of the physicians who had deposed should be regarded by them as matter of opinion, as contradistinguished from direct or positive proof of facts, but that the testimony of physicians—that is, the evidence which the physicians in this case had furnished—"was matter of opinion merely." Such charge manifestly tended to mislead, and was erroneous as an abstract proposition, and injurious to appellant in its practical bearing upon the case.

We see no objection to the proof made by Quartemus, that when he saw the slave, Mary Jane, " she *appeared* to be healthy." The *apparent* condition of the physical system, as to health or sickness, is certainly matter of fact. If the opposite side desired to ascertain what the appearances were which the witness denominated healthy, they should have elicited such proof upon the cross-examination.

What we have said disposes of the several points involved in the charges. We have but to add, that the judgment must be reversed, and the cause remanded.