## Isaac Whittier *v.* Town of Franklin.

Opinions or conclusions of witnesses, not experts, from facts or appearances observed by them, are sometimes admissible from necessity, and to prevent the failure of justice; as in questions of identity of person, hand-writing, sounds, size, distance, and the like.

But when the facts or appearances, on which these conclusions rest, can be described so as to be understood by others, they should be, and the jury left to form their own opinion.

When the question was whether a horse went over a bank by a highway in the defendant town by reason of fright or otherwise, a witness was allowed to state, in substance, that the horse did not appear to be frightened, but sulky; and it was held to be admissible as coming within the exception arising from necessity. .

To prove the bad habits of the horse at the time of the accident, evidence of particular instances of vicious conduct is admissible.

CASE, to recover damages for injuries received and occasioned by an alleged defect in a highway in defendant town.

One point in the defence was, that the plaintiff was, at the time of the accident, driving a horse, known by him to be vicious and unsafe, and that his injuries were caused by the vices of his horse.

Plaintiff called a witness who saw the accident, and went immediately to the place after it occurred.   On cross examination, he was asked to describe the appearance of the horse at the time and afterwards.   His answer was as follows : "I did not see any appearance of fright.   His head was turned round on his side, and Whittier was drawing upon the rein at the time the horse went over the wall.   He did not appear to be frightened in the least before he went off the bank, or afterwards.   He appeared to be rather a sulky-dispositioned horse to use."   This answer was objected to as incompetent, on the ground that it was merely the opinion of the witness.   The court admitted it, and the plaintiff excepted.

It appeared that the horse in question was bought by plaintiff in the

spring of 1863; that he was then four years old, and was not fully broke; that the accident occurred July 4, 1863; that plaintiff had always known the horse from a colt up, before he bought him.

The plaintiff, on direct examination, was inquired of and stated concerning the habits of this horse, as far as he knew, before he bought him, and since, down to the time of trial. Defendant then introduced evidence of the bad habits of the horse, from the time he began to be used, down to the time of the accident, and afterwards down to the time of trial, by showing numerous particular instances of bad conduct and frequent vicious acts of the horse, both before and after the accident, many of which were proved to have been brought to the knowledge of plaintiff, but some of these were not thus shown to have come to his knowledge. To all this class of evidence the plaintiff objected, on the ground that individual instances of bad conduct or vicious acts were not competent; and to those instances more remote from the time of the accident, he objected as too remote to be competent; but the court admitted the evidence, and plaintiff excepted.

The court instructed the jury, that the first question for them to settle was, what was the character and what the habits of the horse at the time of the accident; that all the evidence of his acts or habits before and after the time of the accident, was only important as it tended to satisfy them as to what his character and habits were at that time; and second, they would settle as to what knowledge the plaintiff had of his character, habits and vices at the time of the accident; and they would then decide whether the plaintiff at the time, with such knowledge as he actually had in regard to the horse, was exercising ordinary care and prudence in using such a horse upon that occasion as he knew this horse to be. If he was, they would find for the plaintiff; but if not, they would find for defendant. No exception was taken to the instructions. Verdict for defendant, which plaintiff moves to set aside.

BELLOWS, J. As a general rule, opinions are not evidence. One exception is, as to opinions of experts in matters of trade, science and skill; and there is another arising from necessity, as in the case of identity of persons, hand-writing, sounds, whether of a human voice or of some musical instrument, and if of a human voice, whose voice, and the like.

In these and a vast variety of other cases experience shows that opinions entitled to credit in judicial investigations are formed from minute peculiarities of form, shape, color, sound, &c., that cannot be described in human language, so as to convey any accurate impression of the object, and, therefore, unless opinions are received, there must be a failure of evidence.

When the facts and peculiarities, upon which the opinion is formed, can be stated and described, they must be, and it is then for the jury, and not the witness, to form an opinion. Whether a particular case belongs to the class where opinions, *ex necessitate,* are admissible or not, it is often difficult to determine, and the authorities, therefore, are not always in harmony on the subject. A marked example of this want of

harmony is found in the decisions on the proof of value; it being held in New York and other States, that opinions are admissible of necessity, while in this State they are excluded, and, as we think, without inconvenience to the courts or to litigants. It is true there may be cases where it would be convenient to receive the opinion of a witness at once to the value of a commodity; but in most cases where there was real conflict, the courts would be likely to be embarrassed by large numbers of conflicting opinions, which, upon many subjects, such as horses, might easily be obtained, and to an indefinite extent, affording to the jury no valuable aid, but leaving them after all to form their own opinion upon the facts disclosed.

The question, then, is whether the testimony of the witness that he saw in the horse no appearance of fright and that he appeared rather sulky, comes within the rule which admits opinions from necessity; and this makes it necessary to determine whether the indications of fright or of a sulky, obstinate temper can ordinarily be so described to a jury as to enable them to make the proper inferences. If not, and experience shows that a man of common observation may ordinarily detect the existence of fright or a sulky temper, by marks and peculiarities of appearance that cannot be described, but which at the same time are reasonably reliable, then opinions, as in the case of identity, would be admissible.

Upon this ground, proof of identity by opinions, in a great variety of cases, has been constantly received; such as the identity of person, hand-writing, animals and even inanimate objects. So when the identity is detected by the ear, as the sound of musical instruments, the discharge of a pistol, the human voice and the like.

So it has been held that opinions as to the age of a person come within this principle, *De Witt* v. *Barly & al.*, 17 N. Y. 344; and so held in *Morse* v. *State*, 6 Conn. 9, if accompanied with the facts on which the opinion was founded.

It is held also that opinions as to whether a person is intoxicated may be received. *People* v. *Eastwood*, 14 N. Y. 562. So, as to the existence of a disease when perceptible to the senses. *Milton* v. *Rowland*, 11 Ala. 732. So it is held that a witness may state that a slave appeared to be healthy. *Bennett* v. *Fail*, 26 Ala. 605; or that a person "*was sick*," "had fever," "was pregnant," &c., *Wilkinson* v. *Moseley*, 30 Ala. 562; although, in *Bell* v. *Morrisett*, 6 Jones' Law N. C. 178, it was held that a witness could not state, from the appearance of a slave, he believed him in good health; but it was otherwise decided in *Brown* v. *Lester*, Geo. Decis. Part 1, 77.

In New Hampshire it has been held that a witness may testify that a horse appeared well and free from disease in a general sense, for that would be matter of common observation, or that in running round he showed distress in breathing; but whether the horse was unsound or had a particular disease, as the heaves, a non-expert could give no opinion, for that is a technical question. *Spear* v. *Richardson*, 34 N. H. 428.

In *Willis* v. *Quimby*, 31 N. H. 489, it was decided that a statement of a fact open to observation of common men is admissible; as

that a horse's feet were diseased, and that he was unsound in his feet, for this is clearly open to the observation of every one, whether experts or not.

In *Patterson* v. *Colebrook*, 29 N. H. 94, where the condition of a highway at the place of an accident was the subject of inquiry, it was held that it was not competent for a witness to state that he saw no occasion for the accident; for that is an opinion, not a description of the road. But in *Lund* v. *Tyngsborough*, 9 Cush. 36, it was held that a witness might state that "there was a bad place there—a culvert that I thought a dangerous place; and also that the condition of the culvert was bad;" the court, Fletcher, J., saying that this was merely descriptive in very general terms of the state of the road, but that defendants might have required it more in detail; that the general form of expression did not make it an opinion merely, and not a statement of facts.

In *Robinson* v. *Fitchburg R. R.*, 7 Gray 92, where the question was whether the plaintiff was negligent in approaching the railroad track as he did, the opinion of a witness that there was no other way was held to be inadmissible. In *Currier* v. *B. & M. Railroad*, 34 N. H. 508, it was held that a statement that there was hard excavation, but nothing approaching *hard pan*, is not opinion but fact, a knowledge of which may be obtained by common observation.

These cases, though not altogether harmonious on all points, but differing in the application of the principle which is recognized, are in accordance, nevertheless, with the rule suggested, and the inquiry is whether the case before us comes within that rule.

The substance of the statement of the witness is, that the horse did not appear to be frightened, but appeared to be sulky, and we are inclined to think, that, in respect to both, in the case of the horse, persons of common observation may and do form opinions that are reasonably reliable in courts of justice, from marks and peculiarities that could not in words be conveyed to the minds of jurors to enable them to make the just inferences; and, therefore, that the testimony in question, as in the case of the inquiry about *hard pan*, was properly admitted.

It is in truth much like the testimony that the horse appeared well and free from disease; that his feet were diseased, or that a person appeared to be well or healthy; so of the testimony as to a person's age and whether intoxicated or not.

In this case there is mingled with the testimony no conclusion of law or matter of a technical nature, but it is matter of common observation alone.

The instructions to the jury as to the proof of the habits of the horse, we think were correct. It was admissible to show that the horse was vicious and unsuitable to use for such purposes, and that might be done by proof of acts not brought to the knowledge of the plaintiff, because it is not the knowledge of the particular acts that was to be brought to his notice, but of the character which those acts denote. It would, therefore, be sufficient, after showing his vicious character, to prove notice by plaintiff's admissions, and by similar acts in his presence.

The mode of proving the character of the horse was right, nor are we

aware of any authority that would allow evidence of general reputation. The case does not stand like the character of a person for truth, for then it may well be presumed that it cannot be bad without being known to the public, but it may be otherwise in respect to the vicious propensities of the horse.   We think also that the court, in its discretion, might receive evidence of particular acts extending as far back as the spring before the accident.   *Chamberlain* v. *Enfield*, 43 N. H. 360.

Upon these views, therefore, we think there should be

*Judgment on the verdict.*