## Mobile Life Ins. Co. *v.* Walker.

*Action on Policy of Life Insurance.*

1. *Deposition of witness; when inadmissible.*—Where the deposition of a witness, residing outside of the State, is taken, and he afterwards comes into the court at the time of the trial, and remains at the place where it is held, his unexplained absence at the time it is proposed to introduce his evidence, although not subpœnaed by either party, will not authorize the party taking the deposition to read it; his absence not being shown to have occurred without their procurement or consent.

2. *Physician, opinion of, as to cause of death of assured; when admissible.*—A physician who attended the assured in his last illness, may give his opinion as to the disease with which he was afflicted, and as to the cause of his death.

3. *Examining physician of insurance company; what can not state.*—A life insurance company, when sued upon a policy issued by it, can not show by its physician, who, upon the report of the examination of the assured by another physician, had recommended the acceptance of his application, and upon whose recommendation the policy had been issued, whether he would have recommended the policy if he had known the assured was afflicted with lead poison, the assured not having answered, or been required to answer, upon that point in his application.

4. *Residence; meaning of, in application for, and policy of life insurance.*—A policy of life insurance, and the application for it, must be construed together, and in the absence of something showing a contrary intention, words used in one must receive the same meaning when used in the other. Thus construed, in this case, the word *residence* in the questions propounded the assured, intended to signify his place of permanent rather than of temporary abode; in the sense of domicil, rather than of mere *inhabitancy*—and this being truly stated, the fact that the assured sojourned some year or two in another State did not render his answer untrue.

APPEAL from Circuit Court of Mobile.

Tried before Hon. HARRY T. TOULMIN.

This was an action brought by the appellee, Mrs. Kate Walker, against the appellant, to recover the amount of a policy issued by it in April, 1875, on the life of her father, Dr. Wood, and of which she was the beneficiary. Upon his application for insurance, Dr. Wood was required to answer various questions as to his residence, state of health, present and past; the health, length of life, and cause of death of his relatives. The policy recited that it was made on the faith of these answers, and that if any of them were untrue, or if any fact, likely to influence the action of the company,

was concealed, or if he died by his own hand, then the policy should be void. In answer to a question, "Where have you resided for the last ten years?" he had answered in his application, "Louisiana."

On the trial, the plaintiff offered to read the deposition of one O'Neal, which had been taken by her on interrogatories and cross-interrogatories, on the ground that the witness resided out of the State. Appellant objected on the ground that the witness was then in the city of Mobile. It was admitted by the parties that since the taking of the deposition, said witness had been sent for, and brought to Mobile by the plaintiff; that he was present in court when the trial commenced, and was then still in the city of Mobile. It appeared that the witness had not been subpœnaed by either party. The court overruled the objection, and permitted the deposition to be read to the jury, and the defendant excepted.

The evidence showed that the deceased went to bed apparently well the night before his death, and was found next morning in a dying condition, and in a profound stupor, from which he never revived, and died the same evening; and that a glass, with evidences of morphine on it, was found on the table near his bed. The plaintiff asked one of the witnesses, who was a physician, and had attended the deceased in his last illness, what, in his opinion, was the cause of his death; to this question the defendant objected, on the ground that it was irrelevant and illegal, and called for mere opinion. The court overruled the objection, and permitted the witness to answer; to which action an exception was reserved.

It appeared that the deceased was a native of Kentucky, who had moved to Louisiana and lived there many years; that about 1869 or '70, he went to Kentucky and remained there two or three years, taking his family and closing his office in Louisiana; but returned to Louisiana, resumed his business, and remained there till his death.

There was evidence tending to show that he went to Kentucky to have his daughter educated, and that while there he engaged in no business; that he was unwell during the time he stayed there, and then claimed Louisiana as his residence; that he frequently visited Kentucky previously to that time, and always claimed Louisiana as his home.

The court charged the jury on the subject, "that, if you find from the evidence that the deceased had a fixed residence in Louisiana, ten years before, and during the last ten years before his application for insurance was made, although he may have gone to Kentucky from time to time during that

period, and though he may have remained there for one, two or three years, yet if you find that he went to Kentucky on business, or pleasure merely, without any intention of abandoning his residence in Louisiana, but with the intention of returning there, and, in fact, did return in accordance with such intention, then he did not lose his residence in Louisiana." To this charge the defendant excepted. 2d. " That, if the jury believe from the evidence that in the application made to obtain said policy, said assured was asked where he resided for the ten years past, and he answered in Louisiana, and the answer was, in fact, untrue, then the plaintiff cannot recover." The court gave the charge, but stated to the jury that it was to be taken in connection with the charge just given as above stated ; and to this statement the defendant excepted.

On the trial, the defendant asked Dr. Toxey, a physician and witness for defendant, who recommended said policy, whether he would have accepted or recommended it, if he had known that the deceased had ever been afflicted by lead poison (there being evidence tending to show that he was so affected). This question was objected to by the plaintiff, and her objection was sustained, and defendant excepted.

The various rulings of the court, to which exception was reserved, are now assigned as error.

JOHN T. TAYLOR, for appellant.—The deposition of the witness should not have been admitted ; the ground on which they were taken had ceased to exist, and the witness was within the jurisdiction of the court. All depositions in this State are taken *de bene esse* by statute.—See 2 Ala. 63 ; 9 Por. 654 ; 4 Ala. 641 ; 20 Ala. 182. The court erred in its charge as to the evidence of the deceased. The objects of the question were to ascertain where he had *lived* for the last ten years, so as to judge of his health or the impression made upon it. A man cannot *reside* in two States during the same time. *Residence* and domicile are very different. One may *reside* in several places and not lose his domicile. Bouvier's Dictionary—title, *Residence ;* 2 Kent's Com. 561, note 3. The question asked by plaintiff, as to the cause of the death of the assured, was illegal, called for the expression of a mere opinion, and should have been excluded. The question proposed to be asked Dr. Toxey, should have been allowed. Representations in the application for policy, are warranties, and whether material or not, if untrue, vitiate the policy.—1 Otto, 510 ; 22 Wal. 47.

D. P. BESTOR, *contra.*—The cause which authorized the

taking of the deposition of O'Neal still existed, for he still resided more than one hundred miles away from the place of holding the court.—1 Brick. Dig. 551, § 18 ; 1 Ala. 237, 239. The question asked the physician who attended the deceased in his last illness, was competent. The opinion of a physician is competent evidence as to the cause of death.—Bliss on Life Ins. 607; 31 Iowa, 216. It is the settled law, that a man's residence is where he considers "home." No matter where he goes, if on pleasure or business, if *animus revertendi* is in him, his residence is not changed. Language in a policy or application, if ambiguous, must be construed in the sense in which the insurer had reason to suppose it would be understood, and most strongly against the company.—32 N. Y. 405 ; 3 Best. & Smith, Q. B. 917 ; 31 Iowa, 216. The question proposed to be asked Dr. Toxey, was clearly illegal ; it was simply his opinion as to whether the risk was a good or bad one, and whether, had he known certain facts, which the application did not specifically inquire about, he would have acted as he did in recommending the application for acceptance.—See 27 N. Y. 282 ; 4 Bigelow Ins. Reports, 69 ; 7 Wend. 73 ; 5 Grey, 541 ; 14 Allen, 330.

BRICKELL, C. J.—1. The first question presented by the bill of exceptions, relates to the admissibility, as evidence, of the deposition of O'Neal, taken at the instance of the appellee, on the ground that the witness resided without the State. The appellee subsequently procured the personal attendance of the witness, and he was in court when the trial was commenced, and was in the city of Mobile at the time it was proposed to read the deposition. The cause of his absence from the court at that particular time was unexplained, nor was it shown to have been without the consent of the appellee. All depositions are taken *de bene esse*, or rather provisionally, and if the cause for taking the deposition (with some exceptions provided by statute, not material to be now noticed), does not exist at the time of the trial, it cannot be used as evidence. The reason of authorizing the deposition of a witness residing without the State, to be substituted for his oral examination in the presence of the court, and of the parties is, that he is beyond the jurisdiction of the court, and without the reach of its process, and consequently the party desiring his evidence cannot compel his attendance at the trial. When, however, the witness is present in court, at the time the trial commences, subject to its jurisdiction and process, and remains at the place of holding the court, his unexplained absence at the time it is proposed to introduce his evidence, will not authorize the reading of his deposi-

tion.   If it had appeared that from sickness, or other inability not superinduced by the act of the party taking the deposition, the witness could not attend personally, it may be the deposition should not be excluded, if his actual residence without the State continued.   But, in the absence of any explanation of his absence, and of all acquittal of the party taking the deposition from connivance or consent to such absence, the deposition should be excluded.   The cause for taking the deposition—the non-residence of the witness—may continue as a fact, but the consequence of the fact, which forms the reason for accepting the deposition in the place of a personal examination in open court, the absence of the witness from the jurisdiction of the court, and beyond the reach of its compulsory process, does not exist.   The taking of depositions is in derogation of the common law, and experience has proved that it is not a mode of procuring satisfactory evidence, free from suspicion.   More often than otherwise, the testimony is couched in the language of the commissioner, rather than that of the witness, and the result is, the testimony has an effect variant from that which would be produced if the witness was produced and gave expression to his knowledge in his own words.   The jury are deprived of the opportunity of seeing the manner of the witness, and observing whether he testifies with reluctance for the one, and with readiness for the other party.   And the party "who prepares the witness, and examines him, can generally have so much or so little of the truth, or such a version of it as will suit his case."   It is only in obedience to statutes that such evidence is admissible, and the spirit and reason of the statutes would be contravened by accepting the deposition of a witness within the jurisdiction, and the verge of the court, when the trial commences, and who, without cause or reason, absents himself just at the moment it is proposed to introduce his evidence.

2.  The cause of the death of the assured seems to have been matter of controversy, and there was evidence having some tendency to show that he had been using morphine, and from which an argument could have been addressed to the jury, that his death was voluntary, from its unnecessary and excessive use.   The appellee was permitted, against the objection of the appellant, to examine the physician attending the assured in his last illness, as to his opinion, as to the disease with which he was afflicted, and the cause of his death.   To the general rule, that a witness must testify to facts, and not to inferences or conclusions from facts, or to mere matters of opinion, an exception as old as the rule is recognized in favor of experts having peculiar knowledge or

[Mobile Life Ins. Co. v. Walker.]

skill, in reference to the subject matter of the inquiry.—
*Washington v. Cole*, 6 Ala. 212; *Tullis v. Kidd*, 12 Ala. 648;
*Bennett v. Fail*, 26 Ala. 605; *City Council v. Gilmer*, 33 Ala.
116. The most frequent illustration of the exception, is that
of a physician or surgeon. The opinions of these, "as to
the cause of disease, or of death, or the consequence of
wounds, and as to the sane or insane state of a person's mind,
as collected from a number of circumstances, and as to other
subjects of professional skill," it is of constant practice to
receive, and it forms generally the most satisfactory evidence.
1 Green. Ev. § 440. In actions on life insurance policies,
such opinions are received when the question is, whether
there was a bodily infirmity not disclosed, or the question is
as to the cause of death.—Bliss on Life Ins. § 392, p. 606;
*Miller v. Mut. Benefit Life Ins. Co.* 31 Iowa, 216.

3. There seems to have been evidence tending to show
that the assured was afflicted with lead poison. He was not
required to disclose specially whether he had been, or was
so afflicted, at the time of the insurance. The appellant pro-
posed to inquire of its own physician, who had, on the certi-
ficate of the examining physician, and the answers of the
assured to the interrogatories propounded to him, recom-
mended the issue of the policy, whether he would have given
the recommendation if he had known the assured had ever
been afflicted by lead poison. We cannot regard the evi-
dence as admissible. It did not involve any question of skill
or science, but, in effect, required the witness to answer, after
the risk had proved unfortunate, or hazardous, what he would
have done if facts had been known to him on which he had
not been required to act. The inquiry, as propounded, as-
sumed, also, the existence of a fact, which the evidence
merely tended to prove.—*Rawls v. Am. Mutual Ins. Co.* 27
N. Y. 382.

4. The term *residence*, as employed in the questions pro-
pounded to the assured, was intended to signify the place of
permanent, rather than mere temporary abode; in the sense
of *domicile*, rather than of mere *inhabitancy*. It is undis-
puted that the *domicile* of the assured was truly stated, and
that his sojourn in Kentucky was merely temporary. The
*domicile*, and the place of temporary residence, are each
within the territorial limits, in which, according to the stipu-
lations of the policy, the assured had the right to *visit* or *re-
side*. The policy and the application must be construed to-
gether. Residence, as employed in the one, must have the
same signification it bears in the other, there being no indi-
cation of an intention to employ them in a differing signifi-
cation. The word *visit* is manifestly employed in the policy

in contradistinction to the word *reside*. The one conferring the right to travel and sojourn, and the other the right to acquire domicile by residence with the intention of remaining. The court did not err in the instruction given, or in refusing that requested on this point.

For the error in admitting the deposition of O'Neal, the judgment must be reversed, and the cause remanded.