.HANNAH HOLDEN, administratrix, *vs.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Suffolk. January 19, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Insurance*, Life. *Evidence*. *Witness*, Refreshing recollection, Cross-examination.

The provision of R. L. c. 118, § 73, that "every policy [of life insurance] which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence," does not prevent the application of the assured from being admissible in evidence in defence to an action on a policy which contains no reference to the application to show fraud of the insured in procuring the insurance.

In an action on a policy of life insurance where the defence was that the policy was procured by fraud, a medical witness, who had examined the insured for another company at some time before the policy sued upon was issued and had written on the back of the application a statement of the physical conditions which he found existing at the time of that examination, testified that he had no recollection of the circumstances of the examination and that seeing and examining the

application "did not refresh his memory in any way," but that he could state that he then knew that the statements written on the application were true when made by him. The paper containing the statements was excluded, and the witness was not permitted to use it to refresh his memory. *Held,* that although the writing was inadmissible, the witness should have been permitted to use it as an aid to his memory and thus aided to testify as to the matters stated in the writing.

It is within the discretion of a presiding judge in an action against an insurance company, on the cross-examination of a witness for the plaintiff who formerly was in the employ of the defendant, to exclude the question, asked by the defendant solely for the alleged purpose of showing bias and prejudice on the part of the witness toward the defendant, whether the witness had not been discharged by the defendant for holding back or failing to turn over money entrusted to him by the defendant for a beneficiary, the judge having permitted the defendant to show the fact of the discharge and to ask the witness whether he had any feeling against the defendant.

CONTRACT, by the administratrix of the estate of John J. Holden, late of Boston, on a policy of life insurance issued by the defendant, a corporation organized under the laws of the State of New Jersey, on the life of the plaintiff's intestate. Writ dated October 3, 1902.

In the Superior Court the case was tried before *Harris,* J. No copy of the application for insurance was annexed to the policy. The defendant offered the application in evidence and offered to show that in the application Holden, the insured, declared and warranted that the answers to the questions therein contained were complete and true and were written opposite the respective questions by him, or strictly in accordance with his directions, and that he agreed that the answers with his declaration should form the basis of a contract of insurance between him and the defendant, and that the policy which might be granted by the defendant in pursuance of the application should be accepted subject to the conditions and agreements contained in the policy. The application was signed by the insured. No reference direct or indirect was made in the policy to the application of the insured either as a part of the policy or as having any bearing thereon.

The defendant offered to show that many of the material statements contained in the application were entirely false including the answers to the following questions: Q. 12. "Is life proposed now insured in any other company?" A. "No." — Q. 13. "Has life proposed ever been rejected or postponed by

this or any other company?"   A. "No."— Q. 14. "What is
the present condition of health?"   A. "Good." — Q. 16. "Has
either parent or any brother or sister died of consumption?"
A. "No."— Q. 18. "Is spirituous liquors used?"   A. "No."—
Q. 19. "Has life proposed ever suffered from consumption or
accident of any kind?"   A. "No."

The judge, against the defendant's objection, ruled that neither
the written application nor any oral statements made at the time
of executing the application were admissible.   The defendant
excepted.

During the trial of the case the defendant called a physician,
one Dr. Bean, who testified that at some time previous to the
issuing of the policy in suit he, being a regular examiner for
the John Hancock Insurance Company, examined the insured
with a view to recommending him for insurance in that com-
pany.   It appeared that as required by the rules of the company
he had written on the back of the application in that case a state-
ment of the physical conditions which he found existing at the
time of the examination and a statement of his conclusions as to
whether the life proposed was a good risk or otherwise.   The
evidence was material and was favorable to the defendant.   The
application was forwarded to the John Hancock Insurance Com-
pany, and had been ever since on its files.   The defendant
offered to show that the statements of the witness, Dr. Bean, on
this application were true and were written out at the time of the
examination.   The witness stated that in view of the length of
time which had elapsed since the examination and the number of
people he had examined he had no recollection of the circum-
stances of the examination, and that seeing and examining the
application did not refresh his memory in any way, although he
could state that he then knew that the statements were true when
made by him.

The judge excluded the application itself, ruling that it was
not admissible simply because made up by the witness in the
usual course of his business, and also excluded the testimony of
the witness, on the ground that when used as a memorandum the
application did not refresh the witness's memory.   The defendant
excepted.

During the trial the plaintiff called one Evans, who formerly

had been in the employ of the defendant. He gave certain evidence tending to show that at the time of the issuing of the policy the assured was in sound health. On cross-examination he was asked if he had not been discharged by the defendant, to which he answered " Yes." He then was asked if he had not been discharged for holding back and failing to turn over money entrusted to him by the defendant for a beneficiary. The plaintiff objected and the defendant's attorney stated to the judge that he did not mean to assume or insinuate that the charge against the witness was true, but on the contrary was willing to assume that it was false, and that his question was solely for the purpose of showing bias and prejudice on the part of the witness toward the defendant. The defendant expected, and had a right to expect, that the witness's answer would have been that he was discharged for the reasons stated. The judge allowed evidence of the fact of the discharge, and allowed the witness to be asked whether he had any feeling against the defendant, but refused to allow the witness to answer the above question.

The judge submitted two questions to the jury which they answered as follows:

1. " Did John J. Holden have tuberculosis at the date of the issuance of said policy July 8, 1901 ? " The jury answered " No."

2. " Had his habits of drinking affected his condition so that he was not in sound health at the date of the issuance of said policy ? " The jury answered " No."

The jury returned a verdict for the plaintiff in the sum of $551.12, the amount of the policy and interest; and the defendant alleged exceptions.

*C. T. Cottrell*, for the defendant.

*D. V. McIsaac*, for the plaintiff.

KNOWLTON, C. J. The plaintiff brought suit upon a policy of life insurance, issued to her intestate, and the defendant answered that the policy was procured by fraud practised upon the company in regard to the risk. It is elementary law that this, if proved, would be a good defence. Proof might be made by showing material false and fraudulent representations, whether oral or in writing, and reliance upon them as an inducement to the issuing of the policy. The defendant offered in evidence a

written application of the plaintiff's intestate for insurance, containing representations alleged to be fraudulent.   There is no doubt of its competency on this issue, unless the statute prevents the use of it.

The statute relied on by the plaintiff is as follows: " Every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence.   Each application for such policy shall have printed upon it in large bold-faced type the following words: ' Under the laws of Massachusetts, each applicant for a policy of insurance to be issued hereunder is entitled to be furnished with a copy of this application attached to any policy issued thereon.' "   R. L. c. 118, § 73.   The application referred to in this statute is an application in writing.   The policy in this case has no reference to any application of the insured, either oral or written.   The policy and this application are therefore not within the terms of the statute.

The object of the statute is to prevent companies from holding insured persons bound by a contract in writing of which they have no copy.   While the language of the statute is broad enough to prevent the use of an application to prove fraud, when the policy refers to an application and it is not attached to the policy, there is no reason for extending the statute by construction, so as to make it prevent the proof of fraud by an application, when the policy contains no reference to an application.   It is not the policy of the law to create unnecessary obstacles to the proof of fraud.   It has recently been decided that a provision in a policy of insurance, making it incontestable for fraud from its inception, is void as against public policy.   *Reagan* v. *Union Ins. Co.* 189 Mass. 555.   We are of opinion that this statute does not prevent the proof of fraud by the introduction of an application in writing, in cases where no application is referred to in the policy.

The defendant called a medical witness, who had examined the insured for another company a long time before this policy was issued, and had written out on the back of the application his statements as to the physical condition of the insured at the time of the examination.   The witness testified that he had no

recollection of the circumstances of the examination, and that, seeing and examining the application did not refresh his memory in any way, although he could state that he then knew that the statements written on the application were true when made by him. The writing containing the statements was excluded, and the witness was not permitted to use it to refresh his memory.

The writing was plainly inadmissible; but what the witness said of it was enough to justify him in using it to aid him in testifying. With the aid of the paper he could testify with absolute certainty what statements were made by him at the time of the examination. After the lapse of time, an attorney at law who makes and witnesses many legal instruments might be unable to remember any of the circumstances of witnessing one of these, while the paper, in connection with processes of memory as to his rules and practices in witnessing instruments, would make him know that he saw the paper executed, or heard the signer of it acknowledge the genuineness of the signature. The tendency of recent decisions has been to enlarge the use of entries in writing, made by a witness, as a memorandum to aid him in testifying. It has often been said that a witness can use them only to refresh his memory, and that unless they serve him in that way they are not competent. In a broad sense this may be true, for it may be that one's recollection is refreshed when he remembers his methods and practices in regard to making writings, and from that knowledge and recollection is able to say that the facts are as stated by him in a writing made long before. In this case the witness may not have been quite accurate in saying that the paper did not refresh his recollection in any way, while he was doubtless correct, in the sense that it did not bring back to his recollection the circumstances of the particular occasion. We are of opinion that he should have been permitted to testify of the matters stated in the writing, using it as an aid to his memory. *Mayberry* v. *Holbrook*, 182 Mass. 463. *Costello* v. *Crowell*, 133 Mass. 352. *Cobb* v. *Boston*, 109 Mass. 438, 444. *Morrison* v. *Chapin*, 97 Mass. 72.

The exclusion of the question to the witness Evans, on cross-examination, was within the discretion of the court.

*Exceptions sustained.*