ROMEO PAQUETTE *vs.* PRUDENTIAL INSURANCE COMPANY
OF AMERICA.
LEON LANGDEAU *vs.* SAME.

Hampden. · September 25, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Evidence,* Materiality, In rebuttal, Presumptions and burden of proof.  *Practice, Civil,* Exceptions.  *Witness,* Contradiction.  *Insurance,* Life.  *Words,* " Application."

In an action on a policy of life insurance where the defendant's answer contains a general denial, the proofs of death required by the terms of the policy are material to the plaintiff's case and so are admissible in evidence.

If documents which are admissible in evidence only on a particular issue are put

in evidence generally against the general objection and exception of the adverse party, it is within the discretion of the presiding judge either to submit such documents to the jury or to withhold them, and to the exercise of this discretion no exception lies.

If documents are admitted in evidence generally which are admissible only on one issue, and the party against whose objection and exception they have been admitted does not ask for an instruction limiting their use to the special purpose for which they were offered, he afterwards cannot complain that their use was not so limited.

Previous material statements made by a witness contrary to those in his testimony are admissible for the purpose of contradicting him.

In an action on a policy of life-insurance where witnesses for the defendant have testified that the insured when he took out the policy appeared to be of unsound health and that his appearance gave indications of the excessive use of intoxicants, the plaintiff may be allowed to introduce evidence to rebut this testimony.

Where a policy of life insurance incorporates by reference the application of the insured, the word " application " includes all the questions and answers on both sides of the paper containing the application which are signed by the insured, including the declarations made and signed by him in the presence of the medical examiner of the insurer and excluding only the medical examiner's report.

In an action upon a policy of life insurance which incorporates by reference the application of the insured, where there was attached to the policy a copy of the contents of one side of the paper on which the application was written with the signature of the insured but no copy of the contents of the other side of the paper containing the declarations made and signed by the insured in the presence of the medical examiner of the defendant, the defendant under the provisions of R. L. c. 118, § 73, cannot introduce in evidence a question and an answer of the insured thereto which are written on such other side of the original paper no copy of which was attached to the policy.

In an action on a policy of life insurance, if the defendant offers in evidence the answer of the insured to a question on the back of his application, no copy of which was attached to the policy, and seeks to have it admitted as a misrepresentation which was part of a general scheme of fraud, it is not enough to make this evidence admissible that the defendant in his answer alleged a fraudulent conspiracy to obtain a series of policies on the life of the insured. Before such evidence can be admitted the defendant must have laid a foundation for it by previous evidence of fraud.

In an action on a policy of life insurance, an answer of the insured to a question on the back of his application, which under the provisions of R. L. c. 118, § 73, cannot be admitted in evidence because no copy of the contents of the back of the application was attached to the policy, is not made admissible by the fact that a copy of the face of the application, which was attached to the policy, has been admitted in evidence without any objection by the plaintiff.

In an action on a policy of life insurance, if the defendant sets up in his answer that the policy was made voidable by material misrepresentations of the insured as to his health and habits of sobriety, the burden is on the defendant to prove these allegations.

Two ACTIONS OF CONTRACT brought by different plaintiffs upon separate policies of insurance issued by the defendant at the

same time upon the life of one Arthur Paquette, based upon an application made by Paquette, which application was referred to in and made a part of the policies. Writs dated June 16, 1905.

In the Superior Court the cases were tried together before *Crosby*, J. with a third case of Leon Langdeau vs. the John Hancock Mutual Life Insurance Company on other policies upon the same life.

The plaintiffs put in evidence the policies sued on. Each was for the sum of $500 payable to the executors, administrators or assigns of the insured, and they had been assigned for value to the respective plaintiffs. The plaintiffs offered in evidence the proofs of death under the two policies. These were admitted by the judge against the objection and exception of the defendant. It was agreed that these proofs of death had been received by the defendant, and they were produced at the trial by the defendant at the request of the plaintiffs.

The defendant offered in evidence a paper marked " O " which was identified by Dr. Fletcher, the defendant's medical examiner, as bearing his signature and as containing the answers to questions made by Arthur Paquette in the presence of Dr. Fletcher, the answers to such questions being signed by Arthur Paquette in the presence of the examiner. Question and answer No. 7 were " Have you ever used malt or spirituous liquors to excess ? A. No." The judge ruled that the medical examiner's report was not a part of the application for insurance and not a part of the contract of insurance and not attached to the contract, and excluded the question and answer in the exhibit.

It was agreed that a correct copy of so much of the paper marked exhibit " O " as was entitled " Application for Intermediate Policy in the Prudential Insurance Co.," down to and including the signature of Arthur Paquette on the same side of the paper and the date September 7, 1904, was attached to each policy in suit, but that no copy of the contents of the other side of the paper containing the declarations made and signed by the applicant in the presence of the medical examiner, including the question and answer above quoted, was attached to either of the policies.

The other exceptions relating to evidence are described in the opinion.

At the close of the evidence the defendant asked the judge to instruct the jury to find for the defendant.

He also requested the following rulings in each case :-

. The burden of proof is upon the plaintiffs to show that at the date of the. delivery of the policies the person insured was in good health.

The defendant is entitled to rely upon the representations and answers made by Arthur Paquette to Dr. Fletcher and written down by him and signed by Paquette.

The burden of proof is upon the plaintiffs to show that upon September 7, 1904, Arthur Paquette was of sober and temperate habits.

The judge refused to make any of these rulings.

The defendant excepted to the following rulings made by the judge at the request of the plaintiffs:

15. The fact that the assignee had no insurable interest in the life of the insured is neither conclusive nor *prima facie* evidence that the transaction is illegal.

19. The defendants must prove by a fair preponderance of the evidence that at the time when the applications were made and the policies were issued the insured was addicted to the excessive use of intoxicating liquors.

22. In the Prudential cases, the burden of proof is upon the defendants to establish the fact that the insured was not in good and sound health upon the date the policies were delivered.

The defendant's exceptions to the giving of the instruction numbered 15 was waived.

The judge submitted to the jury the following questions, to which the jury made the following answers :

" 1. Was Arthur Paquette, the person insured, in good health on the day of the date of the two policies issued and delivered to him by the Prudential Life Insurance Company in September, 1904 ?  Ans. Yes.

" 2. Was Arthur Paquette, the person insured, of sober and temperate habits on September 7, 1904, the date when he made application for two policies of insurance in the Prudential Life Insurance Company ?  Ans. Yes.

" 3. Was Arthur Paquette, the person insured, in good and sound health at noon on December 14, 1904, the date when the

two policies of insurance were issued on his life, by the John Hancock Mutual Life Insurance Company? Ans. Yes.

" 4. Had Arthur Paquette, the person insured, ever used ardent spirits, wine or malt liquors to excess prior to December 4, 1904? Ans. Yes.

" 5. Was Arthur Paquette, the person insured, on December 4, 1904, the date when he made application for insurance in the John Hancock Mutual Life Insurance Company, addicted to the excessive use of intoxicating liquor? Ans. No.

" 6. Did Arthur Paquette, the insured, have consumption in September, 1904? Ans. No.

" 7. Did Arthur Paquette, the insured, have an organic and incurable disease of the heart in September, 1904? Ans. No.

" 8. Did Arthur Paquette, the insured, have consumption on December 14, 1904? Ans. No.

" 9. Did Arthur Paquette, the insured, have an organic and incurable disease of the heart on December 14, 1904? Ans. No."

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*H. P. Small*, for the defendant.

*J. F. Malley & D. J. O' Connor*, for the plaintiffs.

BRALEY, J. These cases were tried together, and the exceptions raise certain questions relating to the admission and exclusion of evidence, to the refusals to rule as requested, and to the rulings given. Under the terms of the contracts the plaintiffs were required to prove the death of the insured to the satisfaction of the company before the amount of the insurance became payable. If this event had been admitted by the pleadings, or at the trial, any real or supposed prejudice affecting the defence which the answers to certain of the questions propounded by the company may have contained would have been avoided. Instead of making such admission, among other allegations, the defendant's answer contained a general denial, which put in issue this material fact, and therefore the papers constituting the proofs of death became relevant. The defendant argues that if admitted for this limited purpose, they should not have gone to the jury as they tended to impair its defence to the other issues on trial. Having been put in evidence generally, it was within

the discretion of the presiding judge either to submit or withhold them from the consideration of the jury, and to the exercise of this discretion no exception lies.   Besides the defendant might have asked for an instruction limiting the use of these papers to the special purpose for which they had been offered, but having neglected to make this request it has no just ground of complaint that the evidence subsequently was not limited.   *Burghardt* v. *Van Deusen,* 4 Allen, 374, 375.   *Krauss* v. *Cope,* 180 Mass. 22. See *Jennings* v. *Rooney,* 183 Mass. 577, 584 ; *O'Driscoll* v. *Lynn & Boston Railroad,* 180 Mass. 187, 189.

When a witness has made material statements contrary to those given by him in his testimony such statements may be introduced for the purpose of contradicting him, and the admission during the cross-examination of Dr. Cooley, a witness called by the defendant, of a medical certificate signed by him in which he stated that he had examined the insured on September 19, 1904, was competent for the purpose of contradicting his previous evidence that he had not made an examination at that time.   *Handy* v. *Canning,* 166 Mass. 107, 109.   See *Jennings* v. *Rooney, ubi supra; Robinson* v. *Old Colony Street Railway,* 189 Mass. 594, 596.   The description of the physical appearance of the insured in the evidence in reply also was competent to rebut the testimony of the defendant's witnesses that he appeared to be in unsound health, and that his general appearance showed indications of the excessive use of intoxicants.

- The remaining and principal exception is to the exclusion of a negative answer to an inquiry whether the insured ever had used malt or spirituous liquors to excess.   A policy of life insurance may contain conditions not found in the application, but outside of an independent agreement the application and policy together usually form the contract.   *Commonwealth Ins. Co.* v. *Knabe Manuf. Co.* 171 Mass. 265, 270.   *Millard* v. *Brayton,* 177 Mass. 533, 537.   In themselves these policies contained neither the medical examination and the agreement of the application therewith connected, nor any express condition that as such they were included.   It is plain, however, that they were intended to be incorporated, as these declarations and answers relating to his past and present condition of health and family history were essential inquiries which upon their face showed that the life

proposed was an insurable risk.   But if not found in the policies, then resort must be had to the paper called the application, which by reference is incorporated.   It would be a narrow construction to say that the first page of this paper alone constituted the negotiations, when the second page contained the declarations and statements of the insured without which a policy would not have been issued.   The term " application " as there used was intended to include and did include all the statements on both pages except the medical examiner's report which were considered necessary to form the basis of an intelligible and consistent contract of life insurance, and as thus defined the purpose of the parties is made effectual by a uniform construction which gives effect to every material portion of the entire contract.   *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82, 85.   *Millard* v. *Brayton, ubi supra.*   The copy of the application attached to the policies did not contain the question and answer excluded, and because no copy of the declarations and answers in which they are found was annexed they were not admissible under the statute.   R. L. c. 118, § 73.   *Nugent* v. *Greenfield Life Assoc.* 172 Mass. 278.   *Johnson* v. *Mutual Ins. Co.* 180 Mass. 407.   The defendant, moreover, relies upon the exception that whenever a scheme of actual fraud in procuring the insurance, of which the negotiations formed a part, is pleaded and shown, then even if the application is not attached it may become material, and admissible with other evidence on this issue.   *Carrigan* v. *Massachusetts Benefit Assoc.* 26 Fed. Rep. 230.   *Holden* v. *Prudential Ins. Co.* 191 Mass. 153.   In the first paragraph of the answer it is alleged that a conspiracy fraudulently to obtain a series of policies upon the life of the insured was planned by him and the plaintiffs, and that in pursuance of their plan policies were written by some of the companies to whom they applied, although other companies declined the risk because of his unsound condition of health.   This defence seeks to avoid the policy, not because of a single material misrepresentation, but of a concerted plan which existed at the inception of the contract to defraud the insurer, who for this reason did not become bound.   But the statute would be rendered nugatory if under the guise of this defence an unattached application was admitted without a previous foundation being laid, and some evidence at least must

first be offered to sustain such an allegation before an application not otherwise admissible can be introduced.   While upon proof that such a conspiracy had been formed similar transactions which were a part of the general scheme would have been admissible to prove fraudulent intent, the defendant failed to supply this evidence.  *Jordan* v. *Osgood,* 109 Mass. 457, 461.  *New York Ins. Co.* v. *Armstrong,* 117 U. S. 591.   The exclusion, therefore, of so much of the second page of the exhibit as contained these declarations was right, even if the first page had previously been admitted without any objection by the plaintiff, and the defendant's eleventh request was properly refused.

We do not consider the exception to the giving of the plaintiffs' fifteenth request as it has been waived, and the defendant's remaining requests also were rightly refused, and the rulings given correctly stated the law:  By pleading that the policies were avoided by the material misrepresentations of the insured as to his health and habits of sobriety, the burden rested on the defendant to prove these allegations, which if established would have worked a forfeiture of the insurance.  *Cluff* v. *Mutual Benefit Ins. Co.* 13 Allen, 308, 316.   *Campbell* v. *New England Ins. Co.* 98 Mass. 381.,  *Ferguson* v. *Union Ins. Co.* 187 Mass. 8. *Kidder* v. *United Order of the Golden Cross,* 192 Mass. 326, and cases cited.

*Exceptions overruled.*