ANNIE L. LINDSEY, Admrx., v. METROPOLITAN LIFE INSURANCE CO.

Western Section. March 29, 1929.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

294

Crabtree & Crabtree, of Memphis, for appellant.
Sively, Evans & McCadden and J. P. M. Hamner, of Memphis, for appellee.

SENTER, J. This suit is brought to recover on an insurance policy issued by the defendant on the life of Mary L. Woodruff. The policy was for the sum of $5000. The bill alleges that on September 8, 1926, complainant's decedent, Mary L. Woodruff, applied to the defendant, Metropolitan Life Insurance Company, for a $5000 ordinary whole life policy on her life, and that the application for the insurance on that plan was rejected, after the defendant's medical examiner had thoroughly examined the applicant; that thereafter, on October 4, 1926, the defendant made complainant's decedent a new offer, proposing to insure her life under its endowment plan, tendering her its endowment policy dated October 2, 1926, and by which it agreed to pay to her estate, on due proof of her death, the sum of $5000; that complainant's decedent accepted said policy, and paid the premium demanded therefor. The bill further alleges that complainant is informed and believes, and upon such information and belief, charges that defendant rejected the application for whole life insurance because the reports of its medical examiners and its agents, and other information it had, tended to show that the decedent's physical condition and state of

health to be such as that it was unwilling to take the risk and write the insurance on the whole life policy plan for the premium charged for that policy, and that the policy sued on was at a higher rate of premium than the whole life policy plan applied for.

The answer of the defendant insurance company admits that on September 8, 1926, complainant's decedent, Mary L. Woodruff, made application to it for a life insurance policy, and that the policy as applied for was not issued. But defendant denies that it had fully acquainted itself with the physical condition and state of health of Mary L. Woodruff, or that it had made a thorough investigation of the history of the applicant. The defendant admits that on October 4, 1926, it made complainant's decedent a new offer, by which it proposed to insure her life under its endowment plan, tendering her the endowment policy sued on, dated October 2, 1926, agreeing to pay her estate upon due proof of her death the sum of $5000; but that said policy was issued to Mary Lee Woodruff in consideration of the truthfulness of the answers to the questions contained in the application dated September 8, 1926, executed and filed by said Mary Lee Woodruff with said defendant company. The answer denies liability, except for the premium paid, and which amount is tendered into court, on the ground that the application contained false answers with reference to the state of health of the deceased, and that the policy was procured by the complainant's decedent upon false and fraudulent representations; and that complainant's decedent in procuring said policy, perpetrated a fraud upon the defendant, and knowingly and fraudulently concealed material facts with reference to her state of health.

The complainant called for a jury to try the issues of fact, and certain issues of fact were made up under the direction of the Chancellor and submitted to the jury. These issues were found in favor of the defendant.

In accordance with the rules of the court both the complainant and the defendant tendered their respective issues of fact to be submitted to and tried by the jury. The court declined to submit the issues as made up by the respective parties, but formulated and submitted the following issues, which were answered as set out:

"1. (a) Was Mary L. Woodruff, the insured, in her application for insurance in the defendant company, asked the following questions?

"Have you consulted a physician for any ailment or disease not included in the above answers? A. Yes.

"(b) If your answer, Yes, then: Did the said applicant answer said questions as follows: Yes, influenza, 1923, three days, mild, Dr. Kinkaid, good. A. Yes.

"2. Had said applicants consulted a physician within five years prior to application for the disease known as profound or pernicious anemia? A. Yes.

"3. If you answered paragraph (b) of the first issue 'Yes,' then say if the answer is true or untrue? A. Untrue.

"4. If you find said answer was untrue, did defendant know said answer was untrue before it issued the policy of insurance? A. No.

"5. Was said applicant asked in her application the following questions: 'What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years. and for what illness or ailment?' If none, so state? A. Yes.

"(b) If, 'Yes,' did said applicant make the following answer: 'Dr. J. C. Ayers, Memphis, in 1924, influenza, 3 days.' A. Yes.

"6. If you answer paragraph (b) of issue No. 5, 'Yes,' was said answer true or untrue? A. Untrue.

"7. If you answer 'Untrue' to issue No. 6, did defendant know said answer was untrue prior to the issuance of the policy? A. No.

"8. If you answer that the applicant made the answers set forth in issues No. 1 and 5, and find these answers to be untrue, or either of them, then answer if said answers, or either of them, were made for the purpose of deceiving the defendant in order to obtain the policy of insurance? A. Yes."

The complainant seasonably filed a motion to set aside the verdict and to enter a decree in her favor for the amount of the policy and interest. Since this motion becomes material to a further consideration of the questions made on this appeal, it will be set out in full, and is as follows:

"Comes the complainant, Annie L. Lindsey, administratrix of the estate of Mary L. Woodruff, deceased, and moves the court to set aside the verdict rendered herein, and to enter a decree against the defendant, Metropolitan Life Insurance Company for the amount of the policy, $5000, with interest and costs upon the following grounds, to-wit:

### I.

"Because the court erred, at the conclusion of all the testimony, . in overruling complainant's motion to exclude the testimony (deposition) of Dr. Neuton S. Stern, tending to contradict the statement made in the application, or tending to show the answers of Miss Woodruff made to the questions asked her by the defendant's examining physician, as written into the application were untrue. This was error because:

"(1) The proof shows that the policy, as issued, does not constitute the entire contract between the parties, and therefore, the evidence was incompetent.

"(2) The proof fails to show that a copy of the application for the policy was attached to, or endorsed upon the policy, when issued, and the uncontroverted proof shows that a correct and complete copy of the application was not attached to or endorsed on, the policy when issued, and therefore, the evidence impeaching the statements of Miss Woodruff in the application, was not competent and admissible.''

## II.

The issues submitted to the jury were immaterial, and the verdict of the jury thereon is not binding upon, and should be ignored by the court, because:

"(a) The proof fails to show that a copy of the application was endorsed upon or attached to the policy when issued, and the uncontroverted proof shows that a copy of the application was not endorsed upon or attached to the policy, when issued. Therefore, the statements made by Miss Woodruff, the applicant, in the application, if false, are not available to the defendant insurance company as a defense in this suit.

"(b) The defendant insurance company, having failed to attach a correct and complete copy of the application to the policy when it was issued, is estopped from defending upon the grounds that the answers of the applicant, Miss Woodruff, as shown in the application, were false, and the evidence tending to show the falsity of the answers was incompetent. Therefore, the issues submitted to the jury, predicated upon said unavailable defense, and said incompetent testimony, were immaterial.

"(c) The policy, when issued by the defendant company, did not constitute the entire contract between the parties, and the defense of misrepresentation or fraud, in the matter of the application was not available to the defendant company.

"Wherefore, 'complainant moves the court to set aside the verdict and grant a decree in her favor, as aforesaid, etc.''

The above motion, after argument, was taken under advisement by the Chancellor, and after several days the Chancellor disposed of the motion by overruling and disallowing the same, and decreed in favor of the defendant, dismissing the bill of complainant and adjudging the costs against her and her sureties.

From the action of the court in overruling and disallowing her motion to set aside the verdict, and in refusing to decree a judgment in her favor for the amount of the policy, sued on with interest, and in decreeing a dismissal of her bill, the complainant prayed and was granted an appeal to this court, and has assigned the action of the court as error, for the reasons: "(a) The issues submitted were immaterial. The proof failed to show where the copy of the application was endorsed upon or attached to the policy when issued, and the uncontroverted proof shows that a copy of the ap-

plication was not endorsed upon or attached to the policy when issued. Therefore, the statements made by Miss Woodruff, the applicant, in the application, if false, are not available to the defendant insurance company as a defense in this suit.

"(b) The defendant insurance company having failed to attach a correct and complete copy of the application to the policy when it was issued, is estopped from defending upon the grounds that the answers of the applicant Miss Woodruff, as shown in the application, were false, and the evidence tending to show the falsity of the answers was incompetent. Therefore, the issues submitted to the jury predicated upon said unavailable defense, and said incompetent testimony, were immaterial.

"(c) The policy, when issued by the defendant company, did not constitute the entire contract of insurance between the parties, and the defense of misrepresentation or fraud, in the matter of the application, was not available to the defendant company."

This assignment of error, and its subdivisions, are substantially the same as the grounds set out by complainant in its motion that the verdict of the jury be set aside and decree entered in favor of complainant. Under this assignment it is contended by appellant that the policy of insurance sued on did not contain the entire application made by the applicant for the insurance. It is not disputed that the original application made by the insured is contained in the policy in the form of a photostatic copy, but the contention is that the defendant insurance company rejected the application as originally made and declined to issue the policy of insurance applied for, and that subsequently a supplemental application was made by the insured resulting in the defendant issuing the endowment policy sued on in place of the ordinary whole life plan first applied for, and that the supplemental application is required by the statute in this case to be incorporated in the policy as well as the original application. It is also contended for appellant that the photostatic copy contained in the policy is blurred and in such small type and writing that it is not legible and cannot be easily read.

This was a jury case, the jury having been called for by complainant. The case was heard on oral evidence. There is a bill of exceptions contained in the record, which sets forth all the evidence introduced and heard upon the trial, together with exceptions to evidence and the ruling of the court thereon. The complainant did not make a motion for a new trial. The first question to be considered is that made by the appellee to the effect that the assignments of error cannot be considered on this appeal because of the failure of the complainant to make a motion for a new trial and to have the same acted upon in the court below. If this question

is to be determined in favor of the contention made by appellee, it must result in an affirmance of the decree of the Chancellor.

It is the contention of appellant on this question that, a motion for a new trial was not necessary in order to entitle her to have the decree reviewed by this court on appeal. In support of this contention it is said by appellant that the failure of the insurance company to incorporate in the policy of insurance the so termed supplemental application precluded the defendant from making any question, or introducing any evidence, with reference to the truthfulness or falsity of the answers made by the applicant to the questions contained in the application submitted by her to the defendant for the issuance of the policy. It being further contended by appellant, in this connection, that the issues submitted by the Chancellor to the jury were immaterial, and that any evidence offered on the issues was immaterial; that because failure of the defendant insurance company to incorporate in the policy of insurance the supplemental application as well as the original or first application, was a violation of the provisions of Chapter 441 and Chapter 457 of the Acts of 1907.

The original bill sued on the policy as issued. The answer set up by way of defense that false answers were made to certain questions in the application, and also made the application and the supplemental application or agreement exhibits to the answer. The policy was made an exhibit to the bill. After the answer was filed, it appears that complainant filed the following motion:

"Comes the complainant and says that the pleas of the defendant Metropolitan Life Insurance Company pleaded the applications of complainant's decedent, set out in Sections VIII, IX, X, XI, and XII. of the answers are insufficient in this:

"Because said pleas do not aver that copies of the application and the amended application were endorsed upon or attached to the policy when issued, as required under the statute of Tennessee. Acts 1907, Chapter 457, Sec. 3348-a8, paragraph 4, Shannon's Ann. Code. Wherefore, complainants set said pleas down for argument."

It does not appear that any action was taken by the court on the above motion, but the issues of fact were made up by the direction of the Chancellor to be answered by the jury, and the evidence was introduced. The complainant called for a jury. Only issues of fact are triable by a jury. During the trial of the case the complainant excepted to the evidence of Dr. Stern and moved that his evidence be excluded, the exceptions and the motion to exclude the deposition of Dr. Stern were overruled by the Chancellor. This

witness testified to the facts with reference to the state of health of complainant's decedent at and prior to the time she made application for insurance to defendant, and that she had knowledge of the disease from which she was suffering, and that it was a fatal disease, profound or pernicious anemia. This appears from the bill of exceptions contained in the record.

In the absence of a motion for a new trial only errors appearing from the technical record can be considered on appeal. (Railroad v. Johnson, 114 Tenn., 632; Railroad v. Ray, 124 Tenn., 16; Barnes v. Noel, 131 Tenn., 126; Railroad Co. v. Smith, 147 Tenn., 553; Citizens Trust Co. v. Motor Co., 154 Tenn., 504.)

In Mullins v. Stave Lumber Co., 155 Tenn., 132, it is said in the fifth headnote: "In an action at law, brought to this court by an appeal in error, in absence of a motion for a new trial only errors which appear upon the face of the record proper, or the technical record, will be considered."

The same rule applies in chancery practice where there is a jury called for and issues of fact tried by the jury as in a court of law. (Citizens Trust Co. v. Motor Car Co., supra.)

We think the motion made that the verdict be set aside and decree pronounced in favor of complainant was, in effect, a motion non obstante veredicto, and based on the assumption that no issues of fact were involved, and that the issues presented by the pleadings and the exhibits presented only questions of law. We do not find in the record that complainant ever requested any action be taken by the Chancellor on the motion as to sufficiency of the pleas filed by the defendant. We are inclined to the opinion that a bill of exceptions was necessary in the instant case to entitle the complainant to a review of the decree of the Chancellor on this appeal. It was incumbent upon the complainant to show certain facts, some of which were admitted in the answer, to entitle her to a recovery. The complainant evidently considered the taking of some proof necessary, else a jury would not have been called for by her to try certain issues of fact. We are, therefore, inclined to hold that a motion for a new trial was necessary. However, we will consider the questions made by the assignments of error.

By Chapter 441 of the Acts of 1907 it is provided:

"That every policy of insurance issued to or for the benefit of any citizen or resident of this State on or after the first day of July, 1907, by any insurance company or association doing business in this State, except fraternal beneficiary associations, and mutual insurance companies or associations operating on the assessment plan, shall contain the entire contract of insurance

between the parties to said contract, and every such contract so issued shall be held as made in this State and construed solely according to the law of this State."

By Section 3348-a8 and subsecs. 3 and 4, Shannon's Ann Code, it is provided that all policies of life insurance issued by life insurance company shall contain the following provisions. By subsec. 3, "A provision that the policy shall constitute the entire contract between the parties . . . ," and by subsec. 4, "A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application, and a copy of such application shall be endorsed upon or attached to the policy when issued."

The Chancellor found and so stated, that "It appears from the record, without contradiction, that the insured obtained the policy of insurance from the defendant by fraud and misrepresentation. She knew she had an incurable and fatal malady at the time she applied for insurance. She had been under treatment for pernicious or profound anemia for a considerable while prior to her said application. She concealed this fact from the company. She had, and knew she had, this incurable malady when the policy was delivered to her. She was advised by her physician not to seek insurance. She deliberately sought this insurance knowing that her lease on life had but a short time to run. The fraud of the insured in the procurement of the policy is shown in the record de hors, any statement made in her application."

We think the record fully sustains the above-quoted finding of the facts by the Chancellor, and the jury's verdict on the issues submitted is to the same effect.

It appears that after complainant's decedent had been fully advised by her physician as to the real nature of the malady from which she was suffering, she got in communication with one of defendant's agents in Memphis with the view of procuring a $5000 policy of life insurance on her life. The application contained certain questions bearing directly upon her state of health. She did not make truthful answers to certain of these questions, but knowingly and wilfully failed to disclose the true condition of her health in answering the questions contained in the application. This application, was submitted to the defendant company and was for what is termed in the record, "an ordinary whole life insurance policy" for $5000. The insurance company did not reject the application outright, but was unwilling to issue that form or plan of policy on the face of the application, but upon the strength and good faith of the application, was willing to issue the endowment plan policy at an increased rate of premium, and prepared the policy and sent

the same to its agent in Memphis to be delivered to the insured, and this policy contained a photostatic copy of the application signed by the insured, containing all the questions and answers thereto. At the same time it also sent what is termed in the record "a supplemental application," to be signed by the insured upon the delivery of the policy. This so-termed "supplemental application" did not contain any additional questions or answers, but was merely an agreement to be signed by the insured that she accepted the endowment policy at the increased rate in place of the form of policy applied for. This agreement, referred to in the record as a supplemental application, was not incorporated in the policy, and this failure to incorporate this agreement, or supplemental application, is made the basis of the contention of appellant to the effect that the defendant is precluded, under the statute, from making the defense that false answers were made to the questions asked in the application. In support of this contention, appellant has cited and relies upon numerous authorities and cases, among others, Arnold v. Ins. Co., 131 Tenn., 725. In that case, no attempt to comply with the statute was made, and no part of the application was attached, and the court held that the insurance company was precluded from showing false statements contained in the application, holding that the statute required the entire contract between the parties to be embraced within the contract, and also that the application is required to be attached to or contained in the policy.

In the case of Equitable Life Assur. Soc. v. Cantwell, 4 Tenn. App. Rep., 627, it was held by the Eastern Section of the Court of Appeals that the insurance policy issued by the defendant was a new contract and a new policy and not merely a renewal of a former contract of insurance. The former insurance policy contained the application, but upon a cancellation of that policy and the issuance of the new policy in lieu thereof, the new policy did not contain the application. The point of decision in that case was that the new application for reinstatement, resulting in the issuance of the new policy, did not contain the declarations of the applicant, and which declaration contained statements to the effect that the applicant was then in good health and had had no illness, and had not consulted any physician, and had not been a patient in any hospital within the last five years, and that the health record of his family remained unchanged. This declaration was filed as a part of an application for reinstatement where the policy had lapsed. The contention of the defendant insurance company in that case was, that the new policy was not a new contract but a renewal of the original contract which contained the original application. This contention was not sustained by the court, and it was accordingly held that the application for reinstatement, together with the declarations

contained therein, came within the statute, and should have been attached to or embraced in the new policy.

In the case of Paquette v. Prudential Ins. Co., 193 Mass., 215, 79 N. E. 250, it was held that the entire application signed by the insured was required to be embraced in or attached to the policy, and the court said:

> "The term 'application' as there (in statute) used was intended to include and did include all statements on both pages (of the application) except the medical examiner's report, which were considered necessary to form the basis of an intelligible and consistent contract of life insurance, and as thus defined the purpose of the parties is made effectual by uniform construction which gives effect to every material portion of the entire contract."

An examination of the cases cited and relied upon by appellant discloses that the insurance policies in the respective cases either failed to have incorporated any part of the application, or some material portions were omitted, and in some instances where the insurance company desired further information and submitted additional questions to be answered in the form of an amended or supplemental application, and failed to attach to or incorporate in the policy the amended or supplemental application containing the additional questions and answers required before issuing the policy.

We think it clear under the authorities in this State and in other jurisdictions where similar statutes obtained, that the entire application containing all the questions and answers shall be attached to or incorporated in the policy, and in event of the failure so to do, the insurance company could not be heard to question the truthfulness of any answers made by the applicant to questions asked in the application. In the instant case, if it appeared that the original application, or any material part thereof, had not been attached to or included in the policy, the defendant could not have been heard to offer any proof tending to show that the answers to questions were false, or that the issuance of the policy had been procured by false answers and concealments. However, we are of the opinion that the so-called supplemental application in the present case does not come within the provisions of the statute. While it is written on the form of the supplemental or amended application, when it is examined it is merely an agreement upon the part of the insured to accept the endowment plan policy in place of the ordinary whole life plan as originally applied for. No new or additional questions are asked, and no new or additional answers are made. The material portions of this instrument is as follows:

> "The undersigned hereby amends the application for life insurance made to your company, on date stated above, in the

following particulars; and these amendments and declarations are to be taken and considered as a part of the said application and subject to the agreements, covenants and statements therein contained, and the said application together with these amendments, is to be taken as a whole and considered as the basis of and as a part of the contract of insurance:

"By changing the plan of insurance to Endowment, Age 85, with Disability Annuity.

"In all other respects said application is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof."

It will thus be seen that this instrument was on the usual form, but when it is examined, and the matter made the subject of the amendment, we find that it does not contain any new provisions, but simply agrees to accept the policy as issued on the endowment plan instead of the ordinary whole life plan.

It specifically provides a ratification and confirmation of the statements contained in the original application which is embraced in the policy sued on as a photostatic copy thereof. This was no part of the contract. The contract was complete in itself in the new form or the plan as written. The mere acceptance of the endowment policy by the insured completed the contract, and it was in no sense essential or necessary that the above agreement be executed by the insured.

It was clearly the intention of the insurer and the insured that the policy sued on was issued upon the application originally signed by the assured and contained in the policy by a photostatic copy. The insurance company did not reject the applicant, but was unwilling to issue the form of policy applied for, and proposed the issuance of the endowment policy on the strength of the application made for the ordinary life plan. The insured agreed to this, and accepted the endowment policy and paid the increased premium required for a policy issued on that plan. The entire contract between the parties is contained in the policy, including the application, and we think fully conformed to the provisions of the statute in force on the subject.

But aside from this, the answer specifically averred that complainant resorted to fraud in order to procure the policy. The Chancellor held, and we think correctly, that independent of any false answers contained to questions in the application signed by her, the insured deliberately set about to procure insurance upon being advised by her physician that she was suffering from an incurable malady, and which would inevitably result fatally in a very few years. The record discloses that upon being so advised by her physician she then stated that she was going to take out life in-

surance on her life. It also appears from the record that she was advised by her physician that she could not obtain life insurance because of her state of health. We think it is clear from the evidence that upon being so advised she deliberately set about to procure the insurance, with the fraudulent intention to conceal from the insurance company her true state of health. In pursuance of this plan she communicated her desire for life insurance to an agent of the defendant. He did not solicit her application, but she voluntarily sought the agent in order to make application for life insurance. She did not disclose to the agent any of the facts relative to the malady from which she then knew she was suffering, and which she knew was incurable. These facts are apparent from the record, and constitute fraud upon the part of the insured in the procurement of the insurance. This fraud would render void the policy without reference to her answers to the questions contained in the application.

Cooley, in his work on Insurance, Volume 2, page 1095, states the rule:

> "Even where the written application, or copy thereof, is not attached to the policy, it does not prevent insurer from showing actual fraud in the inception of the contract."

In the well-considered case of Johnson v. Ins. Co., 134 Ga., 800, it is said by the court:

> "But this statute does not exclude an insurance company from showing that the policy was procured by fraud and misrepresentation. To consider the application as a part of the contract of insurance and as forming a warranty or covenant, treats the policy as a valid contract and sets up one of its terms; to seek to set aside or repudiate the policy as having been obtained by fraud is to set up that there was no valid and binding contract of insurance. The two things are entirely different. The legislative enactment which declares that under certain circumstances an application for insurance mentioned in the policy shall not be considered a part of the policy or contract between the parties, does not prohibit one of such parties from showing that whatever the contract was, it was procured by the fraud of the other." (Citing 1 May on Insurance (4 Ed.), par. 29.)

In Paquett v. Ins. Co., 193 Mass., 215, it was said:

> "The defendant moreover relies upon the exception that where a scheme of actual fraud in procuring the insurance of which the negotiation forms a part is plead and shown then even if the application is not attached it may become material and admissible with other evidence on this issue." (Citing Carrigan v. Ins. Co., 26 Fed., 230; Holden v. Ins. Co., 191 Mass., 153.)

In the same case it is further said: "This defense seeks to avoid the policies not because of a single material misrepresentation, but of a concerted plan which existed at the inception of the contract to defraud the insurer who for this reason did not become bound."

In Couch v. Life Ins. Co., 130 S. E., 596, it is said by the court:

"Although the unattached application could not be admitted for the purpose of showing a breach of the contract since it forms no part of the contract, still where the defense is that the policy was fraudulently procured by reason of false and fraudulent representations, material to the risk, the application is admissible, not as a part of the contract and not for the purpose of showing that the policy was void under the contract, but to show that it was fraudulently procured."

Other cases in line with the above could be cited.

Some question is made that the photostatic copy of the application attached to the policy is blurred and some of the letters and written words are small and so blurred as to render it difficult to read. The original policy containing the photostatic copy of the application is sent up with the record, and we have examined it and find that this criticism is not sustained. While some of the letters in the photostatic copy are small, yet the entire copy is legible and can be easily read.

We find no error in the decree of the Chancellor, and all assignments of error are overruled, and the decree of the Chancellor is affirmed.

Appellant and surety on the appeal bond will pay the cost of this appeal.

Owen, J., and Everett, S. J., concur.