## UNITED STATES v. FAULKNER.

### (District Court, N. D. Texas. April 28, 1888.)

1. INSANITY—RESPONSIBILITY FOR CRIME—BURDEN OF PROOF.
   The defendant's admission at the trial of having committed the acts charged, the commission of which by one legally responsible amounts to a crime, requires a verdict of guilty, unless the evidence of defendant's mental condition at the time of the commission of such acts raises a reasonable doubt that he knew what he was doing, and knew that it was wrong to do it, in which case he must be acquitted.[1]

2. SAME—DEGREE OF MENTAL UNSOUNDNESS.
   While mental unsoundness to render one irresponsible need not be furious, nor manifested alike on all subjects, it must be such, on the particular subject out of which the acts charged as an offense are claimed to have sprung, as to render him incapable by reason thereof to discern the wrong of committing such acts, and it must be shown that they resulted from such unsoundness.[1]

3. SAME—EVIDENCE—OPINION.
   The opinion of a physician as to defendant's mental condition, based in part on representations made to him by defendant or others prior to the trial, cannot be considered by the jury.

Two indictments for mailing obscene matter consolidated and tried together. Defendant admitted the commission of the acts charged in both

---

[1] On the subject of insanity as a defense to crime, the degree of mental unsoundness which will relieve from responsibility, and upon whom rests the burden of proof, see State v. Reidell, (Del.) 14 Atl. Rep. 550, and note; Rather v. State, (Tex.) 9 S. W. Rep. 69; State v. Trout, (Iowa,) 38 N. W. Rep. 405, and cases cited in note; Williams v. State, (Ark.) 9 S. W. Rep. 5. See, also, the elaborate notes to Guiteau's Case, 10 Fed. Rep. 161, cited in the opinion.

indictments, and the obscene nature of the letters mailed, but claimed that by reason of masturbation, to which he was addicted, he had become mentally irresponsible. Verdict of guilty, and motion for new trial overruled, and defendant sentenced to pay $2,000.

*Charles B. Pearre*, U. S. Atty., for the Government.

*Herring & Kelley* and *W. S. Baker*, for defendant.

McCormick, J., (*charging jury.*) The defendant is charged with having deposited in the United States post-office, for the purpose of mailing and delivery to the persons addressed, certain unmailable matter, described in the different counts in the indictments consolidated in this case, knowing the unmailable character of said matter. The defendant, through the able counsel representing him on this trial, in open court, and to save time and the necessity of proof of the matters admitted, has admitted that he (the defendant) wrote the letters described in the different counts, and charged to be unmailable matter; that he knew the contents thereof; and that he deposited each of said letters in the post-office of the United States, for the purpose of mailing and delivery; and that said letters are unmailable matter, as charged in said indictments. And the effect and purpose of these admissions are to support all the charges in the indictments, and require at your hands a verdict of guilty on said charges, unless the proof offered in this case as to the mental condition of the defendant at the time he wrote said letters, and deposited them in the mail, raises in your minds a reasonable doubt as to his legal responsibility for his said acts. If not legally responsible, he cannot be adjudged guilty. And as, in the absence of the defendant's admissions, he would be presumed to be innocent until the contrary was shown beyond a reasonable doubt, so now, although the law presumes him to be legally responsible, and, as I have told you, this presumption and his admissions would, in the absence of proof as to his mental condition, authorize and require his conviction, still, this proof being made as to his mental condition, you are required to consider it; and if upon the consideration of the whole proof you are not only satisfied that he did the acts charged, (which are fully admitted,) but are also satisfied beyond a reasonable doubt that at the time he did the acts charged he was legally responsible, you should convict him on all the counts in the indictments; but otherwise you should acquit him on all of said counts. It is not claimed that he is furiously insane, or that he has lost his mind entirely, or become idiotic. The defense attempted to be made by the proof is that, as a result of secret vice, his mind has become so diseased as to render him incompetent or unable to discern the wrong in these acts done by him, or to resist the impulse to do them. It is not every species or degree of unsoundness of mind that makes the man irresponsible. It need not be furious, or be manifested alike on all subjects, but it must be such, on the particular subject out of which the acts charged as an offense are claimed to have sprung, as to render him incapable, by reason of said mental unsoundness, to discern the wrong of committing said acts; and it must be shown that said acts resulted from said unsoundness of mind.

"A jury is not warranted in inferring that a man is insane from the mere fact of his committing a crime, or from the enormity of the crime, or from the mere apparent absence of adequate motive for it; for the law assumes that there is a bad motive,—that it is prompted by malice,—if nothing else appears." *Guiteau's Case*, 10 Fed. Rep. 168.

To enable you to exercise a safe judgment on the question of the defendant's responsibility at the time of the commission of these acts, you have been permitted to hear proof as to his habits and conduct for a number of years before that time, and as to his health and physical condition both before and subsequent to the commission of said acts. Ordinarily, witnesses are not permitted to give their opinions to the jury, but must state only facts within their knowledge, and leave the jury to draw their own conclusions (under proper instructions) from the facts. On questions of mental disease the jury are given the benefit of the professional opinions of skilled witnesses, who have peculiar knowledge of diseases, and of their effect on the faculties of the mind, and of symptoms indicating the presence and species and degree of mental disorders. And five physicians have been admitted to give you their opinions on these questions in this case, based upon the proof as to the condition and conduct of the defendant. The physician Dr. Brown, whose opinions were excluded because he showed he had based his opinion on the family history, with which he was himself wholly unacquainted until called to see him after his arrest, testified as to his examination of the defendant, and as to his physical condition at that time, and that much of his testimony you are to consider; but his opinions based in part at least on the representations made to him by the defendant or others prior to this trial, or any trial in this case, you cannot consider. And, as was well said to you by the counsel both for the government and the defense, these opinions of the physicians are only a part of the proof; and, while you are to consider this part of the proof as every other part of it carefully, the opinions of these witnesses do not control you; you do not and cannot surrender your right to pass upon the whole proof yourselves, nor can you avoid the duty of judging for yourselves on this question of the responsibility of the defendant on the whole proof. And here, as always, you are required to judge of the weight of the testimony, and find your conclusion of guilt or not from your own view of the whole proof, under the instructions given you.

During the progress of this trial it has been my office to decide what of the testimony offered it was proper for you to consider; and by the whole testimony in the case is meant only such as I have admitted to go to the jury, and have not withdrawn from your consideration. It was my office to decide what testimony, if true, tended to prove the issues here submitted. It is your province exclusively to decide whether any given part of the testimony is true, and how far it is true, and what it does prove, as well as to decide what the whole testimony proves. It is also my office to sum up the testimony, whenever and as far as I may deem it necessary or proper; but this does not exclude or relieve you from bearing in mind every part of the testimony that your own recol-

lection retains, nor does any view of the weight or value of the testimony which my summary may seem to imply in any manner bind you, or qualify your right and duty to judge for yourselves of the value of the testimony which has been admitted.

The testimony tends to show that up to the commission of the acts charged in the indictments the defendant bore a good character as a moral man. There is no evidence tending to show that up to the commission of these acts any one save his wife and one other witness knew or suspected that he ever indulged in self-pollution. One witness testifies to conduct of the defendant several years ago (before his marriage, as I understood the witness) in the Pickwick Hotel, in Fort Worth, which may tend to prove such indulgence upon that occasion. And his wife testifies to having seen the defendant indulge in this abuse while in bed with her; but she did not say when it was, or how often she so saw him. Dr. King, who treated the defendant several years ago, testified to finding him affected with nervous prostration, such as might result from fever, and such as did not, at that time, suggest to this witness that it was caused by the indulgence of secret vice. Mrs. Metz testified to three different occasions when she had seen the defendant exhibit strange conduct and appearance, the times and circumstances of which you will recall. A number of other witnesses testified to peculiarities in the defendant's general manner for several years, and some of them to particular occasions when his conduct or language was peculiar, giving the particulars in which it struck them as peculiar. It is undisputed that for some time, perhaps for several years, he has been a salesman and book-keeper in his brother's store in East Waco, in which also others were engaged; and continued so connected with said business up to his arrest; and that during the time that these letters were being written and dispatched his brother was absent in California. It is shown that the first letter was dispatched about the 18th of December last; that it directed how its receipt and acceptance should be acknowledged. It has been shown how his directions were observed, and his action thereon, and the course of the correspondence for about a month, in which he wrote and mailed the four letters embraced in the first indictment; and that prior to that time he wrote and mailed the letter to another young lady, as charged in the second indictment. Upon this proof the physicians, testifying as experts, express opinions various in some respects. Four of them agree that unsoundness of mind is shown, and three of them seem to express the opinion that this unsoundness was of such a character and degree as to cause him to commit the acts, and to disable him from discerning the wrong of doing them. Two express this opinion without any reserve; one with more caution; while two of the physicians express the decided opinion that the defendant's mind was not so unsound as to disable him from discerning that his conduct was wrong. You will recall the particular language and manner of each of these five "experts;" witnesses whose testimony, as I have told you, is not to take the place of your own judgment, but is to be used by you for what you think it is worth, in forming your own conclusion as to the mental con-

dition of the defendant at the times he was writing and depositing in the mail these five letters.

These letters have not been read. I do not know their contents, except so far as counsel have referred to them in their arguments to you. It being admitted that they are of the character charged in the indictments, it was not necessary that I should know their contents; but they are offered to you not only to show that they are unmailable matter, (which is admitted,) but also as acts of the defendant tending to show his mental condition at the time they were written and mailed, and it will be your duty to acquaint yourselves fully with their contents, and carefully to consider them in connection with all the other proof in the case. It may be that the defendant experienced a depraved pleasure in the writing of these letters; that during their writing, and upon depositing them in the mail, he may have experienced that degree of immoderate sexual excitement which one of the physicians described as orgasm, and still have had mind enough to know that it was wrong, and will enough to withhold from the act of putting them in the mail if he had believed he would be detected in it. You must judge if he had. "These instructions given you import, in substance, that the true test of criminal responsibility, where the defense of insanity is interposed, is whether the accused had sufficient use of his reason to understand the nature of the act with which he is charged, and to understand that it was wrong for him to commit it; that if this was the fact he is criminally responsible for it, whatever peculiarities may be shown about him in other respects; whereas, if his reason was so defective, in consequence of mental disorder, generally supposed to be caused by brain disease, that he could not understand what he was doing, or that what he was doing was wrong, he ought to be treated as an irresponsible person." *Guiteau's Case*, 10 Fed. Rep. 168.

Upon the whole case, therefore, if you are satisfied beyond a reasonable doubt that, at the time these letters were written and put in the post-office by the defendant, he knew what he was doing, and knew it was wrong to do it, you should render a verdict of guilty as charged in each count in the two indictments. If you are not so satisfied, you should return a verdict of not guilty.