WILLIAM A. JOHNSON

*vs.*

MAINE AND NEW BRUNSWICK INSURANCE COMPANY.

Penobscot.    Opinion February 23, 1891.

*Insurance.    Life Policy.    Application.    False Statements.    Insanity.*

Unless otherwise apparent from the context, the word "insanity" in statutes and contracts means inability to reason and will intelligently.

When a party makes unqualified statements in a contract, and therein stipulates

that they are full, complete and true, he stipulates for actual, absolute truth, and not for truth according to his belief or understanding.

When a party stipulates in a contract that all his statements therein are material, and that falsity in any of them shall avoid the contract, the court can not, without an enabling statute, pronounce any of them immaterial.

In a life insurance contract, one of the statements by the assured, stipulated by him to be material and true, viz: that his brother never had insanity, was untrue. *Held*: that it avoided the contract.

ON REPORT.

This was an action brought by the plaintiff, as one of the beneficiaries named in a certificate or policy of life insurance issued by the defendants, to recover the money payable to him after the death of the insured, who was his half-brother. Plea was the general issue with brief statement alleging fraud and a breach of warranty by the insured in his application. The case is stated in the opinion.

*A. W. Paine*, for plaintiff.

Counsel argued that the answer, in the application complained of, was the truth, weak-mindedness not being insanity. Applicant answered honestly, according to his understanding of the meaning of the question. The question related to a third person, the answer was immaterial unless it first appears that insanity was hereditary in the family. Defendants must show that the brother of the insured had insanity, and was hereditary. If not hereditary, it was not material and afforded no defense.

Counsel cited: *McCoy* v. *Mut. Ins. Co.* 133 Mass. 82-85; *Campbell* v. *N. E. M. L. Ins. Co.* 98 Mass. pp. 390, 391; *Hinckley* v. *Ger. Ins. Co.* 140 Mass. pp. 38, 45, 46; *Ring* v. *Phœnix Ins. Co.* 145 Mass. 426-8; *Ins. Co.* v. *Gridley*, 100 U. S. 614; *Brockway* v. *Mut. Ben. L. Ins. Co.* 9 Fed. Rep. 249; *Cen. Ins. Co.* v. *Thœna*, 26 Ills. 495; *Me. Ben. Asso.* v. *Parks*, 81 Maine, 80; *Diebold* v. *Phœnix Ins. Co.* 33 Fed. Rep. 807; *Fisher* v. *Crescent Ins. Co. Id.* 549; *McGurk* v. *M. L. Ins. Co.*, 56 Conn. 528; *Clapp* v. *Mass. B. Asso.* 146 Mass. pp. 519, 530-1; *Moulor* v. *Am. L. Ins. Co.* 111 U. S. pp. 343-5; *Mark* v. *Rochester Ins. Co.* 106 N. Y. 560; *Grattan* v. *M. Ins. Co.* 92 N. Y. 274; *O'Brien* v. *Home Ben. Soc.* 117 N. Y. 310, and cases cited; *Nat. Bank* v. *Ins. Co.*,

95 U. S. 673 ; *Grace* v. *Am. L. Ins. Co.* 109 U. S. pp. 278, 282 ; *St. George* v. *Biddeford*, 76 Maine, pp. 593-6 ; *Darrow* v. *Family Fund Soc.* 6 Lawyers' Rep. Annotated, 495-8, and cases cited : *Wright* v. *M. B. L. Asso.* 118 N. Y. p. 243.

*Baker, Baker and Cornish*, for defendants.

EMERY, J.   On report.   The material facts established by the admissions and evidence are these :—James H. Smith and the Maine and New Brunswick Insurance Company made a contract of insurance upon the life of Smith by the company, partly payable upon Smith's death to the plaintiff, his half-brother. This contract was evidenced by two written instruments,— one, called the "application," signed by Smith, the other, called the "policy," signed by the proper officers of the company.   All the terms and conditions of the contract were embraced in these two writings.

The application contained various statements, and questions and answers thereto, and at the end were the following certificates signed by the applicant Smith.

1.   "I have verified the foregoing answers and statements, and find them to be full, complete and true.   I do also adopt as my own, whether written by me or not, each foregoing statement, representation and answer, and I agree that they are all material."   . .

2.   "I do hereby declare and warrant that the foregoing answers and statements are full, complete and true ; and I agree that this declaration and warranty together with the preceding agreements shall form the basis of the contract between the undersigned and the Maine and New Brunswick Insurance Company, and are offered to said company by me, as a consideration of the contract applied for, and are hereby made a part of the certificate to be issued on this application ; and if there be any concealment, misrepresentation, or false statement or statement not true, made herein then the certificates to be issued hereon, shall be null, and void."   . .

The policy (or certificate) contained a stipulation that it was issued upon the condition that the statements and declarations

made in the application were true, and that the application was a part of, and the basis, of the contract of insurance.

In the application, among others, was the following question and answer :

No. 16.   "Have either of your parents, brothers, or sisters, ever had insanity, consumption, chronic cough, or any scrofulous, contitutional or hereditary disease ?

"Answer.   No."

At the time of making this application, however, (July 8, 1888,) the applicant Smith had a brother, John T. Smith, who was then an inmate of the Central Lunatic Asylum, Va., having been committed to that asylum, in 1880. He was a monomaniac, made so by religious excitement.   He was quiet, peaceable, and harmless.   He was employed daily at the pump-house, assisting the firemen, and did other light work.   His mental disease was of the class called by physicians "chronic dementia."   His physical health was good, and so far as appears, was unaffected by his mental condition.

James H. Smith, the applicant, had full knowledge of the mental condition of his brother John, as above described (so far as a person unskilled in mental disease, would observe, or appreciate it,) at the time of the making of this contract upon his own life, but made no other statement about it in his application than his above answer to question No. 16.

James H. Smith, the applicant, died March 16, 1889, of acute mania in the Westboro' (Massachusetts) Insane Hospital, to which he had been committed February 25, 1889.   While in the hospital he was noisy, incoherent, untidy, destructive, and delirious.   The immediate cause of his death was "exhaustion of acute mania."   The plaintiff, a beneficiary under the policy, having observed all the legal preliminaries, brought this action against the company to recover the amount specified in the policy to be paid to him upon the death of the insured.   The defendant company defend the action contending, under the proper pleadings, that the applicant's negative answer to question No. 16, in the application and above quoted, was erroneous ; and that such error of answer or statement rendered the con-

tract void, under the express stipulations in the application and policy. The plaintiff opposes this contention of the company, with various counter propositions, which we now proceed to consider.

1.   The plaintiff contends first, that the answer was not in fact erroneous,— that the applicant's brother John, was not insane in the sense in which the word "insanity" was used in question No. 16.   His argument is, that the word "insanity," used in that connection in an application for life insurance, only means such forms of insanity as affect physical health, and tend to shorten physical life ; and does not include in its meaning, a case of chronic dementia, where the patient is quiet and harmless, and in physical good health.

Etymologically, insanity signifies unsoundness.   Lexically, it signifies unsoundness of mind, or derangement of the intellect. Medical science with its usual zeal has deeply investigated the various forms, symptoms, causes, results, and manifestations of mental unsoundness, or disease, and has discovered numerous kinds of such diseases to which it has given appropriate technical names.   Dr. Hammond (late Surgeon General U. S. Army,) for instance, classifies these kinds into seven classes, and thirty-three sub-classes (not claiming, however, this to be a natural classification).   Dementia, and mania, are both specified in this classification.   But however necessary such an analysis and classification of mental diseases may be to the science of medicine, they are impracticable and unnecessary in legal science. In law, every mind is sound that can reason and will intelligently, in the particular transaction being considered ; and every mind is unsound or insane that can not so reason, or will.   The law investigates no further.   Whether this last named mental condition be congenital, or the result of arrested mental developement, or of religious excitement, or of physical disease, or of dissipation, or of old age, or of unknown causes ; whether it be casual, temporary, or permanent ; whether it be personal or hereditary ; whether it be manifested in the mildest dementia, or the wildest mania, it is expressed in law by the same word, "insanity."   When this word occurs, unexplained, or unlimited,

in any statute, contract, or other legal literature, it signifies any derangement of the mind, that deprives it of the power to reason or will intelligently. The mind of John T. Smith, the brother, suffering from chronic dementia, as described, had unquestionably lost that power of reasoning or willing, and to say in the application that he had no insanity was clearly untrue. *St. George* v. *Biddeford*, 76 Maine, 596.

2. The plaintiff contends again, that whatever be the legal meaning of the word "insanity" in the application, the applicant did not understand it to include his brother's case,— that although the applicant knew the facts as to his brother's mental condition, he did not know that such condition was one of insanity,—hence that his negative answer was correct according to his best knowledge and belief. If the applicant was sincere in such a belief, it would acquit him of fraud in so answering, but his sincerity is not enough to uphold a contract stipulated to be based on the actual correctness of his answers. He stipulated absolutely, in his application, that his answer was "full, complete and true." Such a stipulation calls for truth in fact, not merely for the applicant's knowledge and belief. His answer was unqualified. It purported to state an absolute fact. He did not qualify it, by any reference to belief, or understanding. The other party was to rely upon the language used, the outward expression, without inquiring into the inward belief. Had he stated his answer to be merely according to his belief, and such answer had been accepted, his belief might be material and sufficient, as in *Insurance Company* v. *Gridley*, 100 U. S. 614, cited by plaintiff's counsel ; but as the answer stands in this case, the applicant's belief and sincerity are clearly immaterial and insufficient.

3. The plaintiff contends still, again, that the answer can not affect the contract, because, if untrue, it was immaterial. His argument here is, that the insanity of the brother did not affect his physical health,— is not shown to be a family taint,— did not in any way increase the risk of insuring the applicant's life, and hence was an immaterial matter not in any way affecting the contract. We do not think, however, the question of the

materiality of the answer is now open for consideration. That question was closed by the parties themselves. They stipulated that this answer, with all other answers, was material. The company was under no obligation to insure the life of the applicant. It was a private corporation doing a private business. It could admit or reject applicants at will. It could impose such terms and conditions, (not illegal,) as it pleased, however immaterial or trivial they might appear to the court. It had a right to stipulate that it would not insure the life of any person whose brother had ever had any kind or degree of insanity. It had a right to stipulate that any insanity, in any relative, should be regarded as material to the risk. The applicant could decline to enter into a contract for insurance on those terms and conditions, or he could accept them and close the contract.

The legislature of this state has interposed to some extent in fire insurance contracts, and enacted that certain representations or statements in the application, must be shown to be in fact material, before they shall be held to avoid the contract. It is not competent, in such cases, for the parties to conclude for themselves a question which the statute declares shall remain open for the court. There is no such statute affecting life insurance contracts. The parties to these contracts are left free to agree upon their own terms, conditions and stipulations, (except as to forfeiture for non-payment of premiums, there being a statute regulating that.) Until a statute shall intervene, a court of law must recognize the contract the parties make, and not venture to change it in any way. Whatever the parties say and agree in their contract shall be material, (always assuming it not to be unlawful,) the court can not declare to be immaterial. *Jeffries* v. *Life Insurance Co.* 22 Wall. 47; *Aetna Life Insurance Co.* v. *France*, 91 U. S. 510.

The other contentions of the plaintiff, are simply different statements of those above considered. The plaintiff's counsel has argued his several propositions in a very full and elaborate brief which we have thoroughly studied. He has cited many authorities which we have painstakingly examined, as, however clear our own views, we would hesitate to run counter to the

general current of judicial decisions. We think, however, that in every seemingly similar case, where a different result has been reached by a court, it will be found that the language of the application, or policy, was materially different from the language in this case, or else some statute intervened to modify the language. Thus in *Moulor* v. *Am. Life Insurance Co.* 111 U. S. 335, so confidently cited by the plaintiff's counsel as conclusive, there was no stipulation in the contract, that each question and answer should be regarded as material. The court naturally held that, in the absence of such a stipulation, the company must show to the court the actual materiality of the statement complained of. We do not think any court in the absence of a modifying statute, has gone to the extent of expunging from a contract, or disregarding in its construction, any statement or item, which the parties distinctly and in terms agreed should be regarded as material, and essential to the contract.

In this case, it was agreed by the parties, that the 16th question and answer were material, and that an untrue answer should vitiate the contract. The answer was untrue, and we must give effect to the agreement of the parties, and declare the policy for that reason, void.

*Judgment for the defendant.*

PETERS, C. J., LIBBEY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.