ADAMS v. MANHATTAN LIFE INS. CO.—141 S. W. (2d) 930.

Middle Section.   December 21, 1939.

Certiorari Denied by Supreme Court, June 29, 1940.

Farmer, Denney & Leftwich, of Nashville, for plaintiff in error Mrs. Adams.

Seay, Stockell & Edwards, of Nashville, for defendant in error Manhattan Life Ins. Co.

CROWNOVER, J.   This is an action, by the beneficiary, the plaintiff Mrs. Adams, to recover on a $5,000 policy of insurance

issued to Clarence C. Adams by the defendant insurance company.

This policy was issued on February 8, 1937. Adams became ill with a heart attack in March, 1937, and died on October 7, 1937, of heart disease, described by the doctor as an enlarged, "decompensating heart."

Among the questions required to be answered in the application were No. 17 and No. 18 of Part 2, as follows:

"17. Have you ever suffered from any ailment or disease of

" (a) The Brain or Nervous System?

" (b) The Heart, Blood Vessels or Lungs?

" (c) The Stomach, Intestines, Liver, Kidney or Bladder?

" (d) The Genito-Urinary Organs or Rectum?

"18. (a) Have you ever had Rheumatism, Gout, Syphilis, or Diabetes? . . .

" (e) Have you consulted a Physician for any Ailment or Disease not included in your above answers?"

To all of these questions he answered, "No."

To the question "18(f) Are you in Good Health?" he answered, "Yes."

The defendant insurance company filed three pleas: (1) nil debet; (2) non assumpsit; and (3) a special plea to the effect that the insured had answered falsely questions in the application as to whether he had been rejected by other insurance companies, whether he had had certain diseases, and whether he had been treated by physicians within the past five years; and that this policy was therefore procured by fraud.

The insurance company insists that he had had syphilis, and had heart disease when he made this application; that he knew these facts and denied the same for the purpose of defrauding the company.

It is also insisted that he drank intoxicating liquor, but denied this fact; and that he had been rejected by another insurance company, and answered that he had been "postponed."

The plaintiff filed a replication in which she averred that the defendant could not rely upon alleged misrepresentations in the application, because the policy did not contain a written copy of the application (Code, sec. 6179(4)), as question 19 of Part 2 was as follows: "19. What Physician or Physicians, if any, not named above have you consulted or been treated by, within the last five years, and for what illness or ailment?" and the examining physician wrote after this question, "(See remarks)," but the remarks are not a part of the copy of the application.

It appears that these "remarks" were as follows: "In 1931 Dr. Wm. L. Cowles, Birmingham, Ala., told him his blood pressure was elevated. (He lost a lot in the crash.) His blood pressure was taken twice. The first recorded above was taken Jan. 12, 1937 (138-86). The next day it was taken again after he was relaxed for 10 min. (Jan. 13, 1937) and it was (134-82)."

The defendant filed a rejoinder, that these "remarks" were made by the examining physician and were not a part of the application attached to the policy.

The defendant paid into court the amount of the premiums, $94.74, which had been tendered to the plaintiff and refused.

The plaintiff filed a motion to strike that part of the rejoinder which attempts to set forth these "remarks" because they were not a part of the application, and a demurrer to that part of the rejoinder which averred that these remarks did not have to be attached to the policy.

The court overruled this motion and this demurrer.

The case was tried by the judge and a jury. At the conclusion of the evidence the defendant moved the court for peremptory instructions in its favor on the ground that there was no evidence upon which a verdict could be predicated against the defendant and in favor of the plaintiff.

Thereupon the plaintiff moved the court to exclude the evidence in regard to statements made in the application, because a copy of the entire application was not attached to the policy, and to direct a verdict for the plaintiff. And further moved the court to exclude from the jury the depositions of the officers of the company to the effect that the company would not have issued the policy had it known that the statements made in the application were untrue.

The court overruled the plaintiff's motion and sustained the defendant's motion and directed a verdict for the defendant.

The plaintiff's motion for a new trial was overruled, and she appealed in error to this court and has assigned errors, which are, in substance, as follows:

The court erred in failing to hold that the insured's application was not made a part of the policy and that therefore the insurance company was precluded, under Code, sec. 6179(4), from introducing evidence to show that the answers made in the application were false.

Two propositions were raised by the pleadings:

(1) Was the insurance company precluded from introducing evidence showing false statements contained in the application, because of its failure to attach the entire application to the policy?

(2) Was the issuance of the policy procured by the fraud of the insured?

The facts of the case are as follows:

Clarence C. Adams was the manager of an insurance agency, in 1937, and a man of the age of forty-one years. He had been engaged in the insurance business all his business life.

He was married in 1916 and had four children.

In 1930 he had business reverses, lost all his property, and allowed his life insurance policies to lapse.

Dr. Ira J. Sellers treated him, in Birmingham, in 1928, for syphilis. He gave him a Wasserman test which was positive four plus. He treated him twelve or thirteen months. In 1932 and again in 1934 he treated him for gonorrhea.

Dr. Sellers testified that while he was treating Adams for both syphilis and gonorrhea Adams told him he wanted to be cured so he could obtain insurance to protect his family.

In 1930 Dr. William D. Sellers examined him and found he had high blood pressure and enlargement of the heart.

Adams applied for life insurance to the Kansas City Life Insurance Company in 1933. Dr. C. A. Donnelly examined him for the company and advised the company to reject him because of enlargement of the heart and arterial hypertension, and the company rejected him, and so informed him.

In 1935 Adams moved to Nashville and became manager of a fraternal insurance agency. He met the agent of the Manhattan Insurance Company, West, and told him about his business reverses and the lapsing of his life insurance. West solicited him for insurance. About six months later Adams signed an application for the policy involved in this suit.

The policy contained the following provisions: "This policy and the application herefor, copy of which is attached hereto, constitute the entire contract between the parties hereto. All statements therein purporting to be made by or on behalf of the insured as the basis for the contract shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense to a claim hereunder unless it is included in the written application herefor and unless a copy of the application is endorsed hereon or attached hereto when this policy is issued."

▉ 1. The first question involved is whether the insurance company is precluded from introducing evidence showing that the statements contained in the application were false, where the policy did not contain a copy of the whole application.

. Code, sec. 6179, provides: "No policy of life insurance shall be issued in this state or be issued by a life insurance company organized under the laws of this state unless the same shall contain the following provisions . . . (4) . . . that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application, and a copy of such application shall be indorsed upon or attached to the policy when issued."

The insurance company cannot introduce evidence to attempt to show that the answers in the application are untrue unless the entire application is attached to the policy. Arnold v. Insurance Company,

131 Tenn., 720, 177 S. W., 78; Lindsey v. Metropolitan Life Ins. Co., 10 Tenn. App., 293, 303; but,

■ 2. Although the application is not admissible in evidence as a part of the contract if a copy of it has not been attached to the policy in accordance with the statute, it may be admitted to prove that the policy was procured by fraud and misrepresentation.

"Under Tennessee statutes, which provide that no life policy shall issue unless it shall stipulate that 'all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application, and a copy of such application shall be indorsed upon or attached to the policy when issued' (Tenn. Acts 1907, chap. 457), and that policies 'shall contain the entire contract of insurance between the parties to said contract' (Tenn. Acts 1907, chap. 441)—the contents of an application to which such acts apply, but which is not endorsed upon or attached to the policy, are not admissible in evidence to establish misrepresentations herein. Arnold v. New York L. Ins. Co., 1915, 131 Tenn., 720, 177 S. W., 78; Equitable Life Assur. Soc. v. Cantwell, 1927, 4 Tenn. App., 627.

"But it has been held that the statutes do not preclude the showing of initial fraud in the procuring of the policy; that is, that it was procured by false and fraudulent representations made with fraudulent intent, and that such fraud renders the policy void without reference to the false answers in the application and regardless of the fact that it was not attached to or indorsed upon the policy as required by the statute. Lindsey v. Metropolitan L. Ins. Co., 1929, 10 Tenn. App., 293." 93 A. L. R., 392, 393.

In the case of Prudential Ins. Co. v. Niland, 111 N. J. Eq., 347, 162 A., 605, 608, 93 A. L. R., 369, 373, the court said: "It is well settled in this jurisdiction that false statements in the application knowingly and fraudulently made by the applicant, material in nature, intended to induce and actually inducing the issue of the policy by the insurer, which latter, in good faith, relied upon the truthfulness of the representations, are evidential of fraudulent procurement, that neither the statute nor the policy form under consideration wipes out such initial fraud, and, further, that neither the statute nor the said policy form, in an appropriate action directed towards that fraud, nullifies the materiality or the admissibility of the statement contained in the application, whether the same be or be not indorsed on or attached to the policy itself."

"An insurer is not precluded, on account of failure to attach a copy of the application to a life insurance policy, by a statute which makes the attaching of such copy a condition of the right to base a defense to an action on the policy on anything contained in or omitted from the application, from setting up as a defense to a

policy which declares that it constitutes the entire agreement between the parties, and that, if the insured is not in sound health on the date thereof, the insurer may declare the policy void, that the insured was not in sound health when the policy was issued.'' Washington Fidelity Nat. Insurance Company v. Burton, 287 U. S., 97, 53 S. Ct., 26, 77 L. Ed., 196, 87 A. L. R., 191.

''The construction generally put upon enactments like the one before us indicates that the principal if not the only purpose is that, if there be an application, a copy of it shall be attached to or otherwise delivered with the policy, so that the documents showing the entire agreement shall be made available to the insured. That serves to guard the insured against misunderstanding as to his contract, and, in case of controversy with the company, to protect him against surprise, inconvenience, and danger of injustice liable to arise where the policy does not contain the entire agreement and refers for parts of it to applications or other papers. That purpose is reflected clearly by the clause that, in default of the required delivery of a copy of the application, no defense shall be allowed to such policy on account of anything 'contained in, or omitted from, such application.' And the baring of such defenses is the only consequence declared to result.

''Here the policy definitely declares that it constitutes the entire agreement between the parties. The defense interposed is based solely on one of its provisions, and has no relation to the application. The section does not require written applications to be made or declare that, where one is made but not delivered with the policy, there shall be no defense based on the provisions of the policy itself. And no reason is suggested in support of a construction of the section that would prevent defense based on a provision of the policy, even though a similar or the same provision were contained in an application. As this policy expressed the entire agreement, defendant, notwithstanding its failure to deliver a copy of the application, was entitled to interpose such defenses as would have been open to it if no application had been made. MacKinnon v. Mutual F. Ins. Co., 89 Iowa, 170, 173, 56 N. W., 423; Imperial F. Ins. Co. v. Dunham, 117 Pa., 460, 473, 12 A., 668, 2 Am. St. Rep., 686. It follows that section 657 [a statute similar to ours] furnishes no support for the refusal of the trial court to permit defendant to show that the insured was not in sound health when the policy was issued.'' Washington Fidelity Nat. Ins. Co. v. Burton, supra.

''Where copy of application was not attached to policy of life insurance, application was admissible, not as part of contract, nor to show policy was void under contract, but to show that it was fraudulently procured.'' Couch v. Life & Acc. Ins. Co., 34 Ga. App., 543, 130 S. E., 596.

In Johnson v. American Nat. Life Ins. Co., 134 Ga., 800, 802, 68 S. E., 731, 732, the court said: ''This act provides that, where a

reference is made in the policy of insurance to the application, a correct copy of the latter must be attached to the policy, and unless this is done such application shall not 'be considered a part of the policy or contract between such parties.' But this does not exclude an insurance company from showing that the policy was procured by fraud and misrepresentation. To consider the application as a part of the contract of insurance, and as forming a warranty or covenant, treats the policy as a valid contract and sets up one of its terms. To seek to set aside or repudiate the policy as having been obtained by fraud is to set up that there was no valid and binding contract of insurance. The two things are entirely different. The legislative enactment, which declares that, under certain circumstances, an application for insurance mentioned in the policy shall not be considered a part of the policy or contract between the parties, does not prohibit one of such parties from showing that, whatever the contract was, it was procured by the fraud of the other.''

''Whenever a scheme of actual fraud in procuring the insurance, of which the negotiations formed a part, is pleaded and shown, then even if the application is not attached it may become material, and admissible with other evidence on this issue. Carrigan v. Massachusetts Benefit Assoc. (C. C.), 26 F., 230; Holden v. Prudential Ins. Co., 191 Mass., 153, 77 N. E., 309.'' Paquette v. Prudential Ins. Co., 193 Mass., 215, 221, 79 N. E., 250, 251.

The uncontroverted evidence is that Adams knew that he had had syphilis and heart disease and had been treated by physicians for both before he signed this application, as he asked the doctor to cure him of these diseases so that he might obtain insurance.

His wife denied that he had syphilis, gonorrhea, and heart disease, but she did not deny that he had been treated for these diseases. However, her testimony on these diseases is only the testimony of a layman and is not entitled to any weight as against medical expert testimony.

''We deal here with a hidden disease, the every symptoms of which would not be apparent to a layman. When the case concerns a highly specialized branch of medical science, with respect to which a layman could have no knowledge . . ., the court must depend upon expert testimony; and, in such case, in the absence of substantial evidence to the contrary, it is improper to submit the issue to the jury. Vaughan v. Oliver, 3 Tenn. App. [559], 566; Ewing v. Goode (C. C.), 78 F., 442, 444; Moratzky v. Wirth, 74 Minn., 146, 76 N. W., 1032; Clark v. State, 12 Ohio, 483, 40 Am. Dec., 481.'' American Nat. Ins. Co. v. Smith, 18 Tenn. App., 222, 227, 228, 74 S. W. (2d), 1078, 1081; Standard Life Ins. Co. v. Strong, 19 Tenn. App., 404, 89 S. W. (2d), 367; National Life & Accident Ins. Co. v. Follett, 168 Tenn., 647, 80 S. W. (2d), 92.

Adams, an insurance man, knew that a policy would not be issued to him if he answered that he had had syphilis and had heart disease at the time he applied.

Several officials of the insurance company testified the company would not have issued the policy had these facts been stated in the application by Adams.

We hold that the application was not complete and in such case the application is not to be considered a part of the policy or received in evidence in a suit brought upon it. But we further hold that the issuance of the policy was procured by the fraud and misrepresentation of Adams, and that the application may be looked to for this purpose, and the plaintiff cannot recover. We think that under all the evidence in this case the assured intended at the start to perpetrate a fraud upon the company by procuring a policy that he was not entitled to, and it makes no difference whether the fraud is proven by outside facts or by statements made in the application proven to be false. A fraud is a fraud when legally proven.

All the assignments of errors are overruled, and the judgment of the lower court dismissing the plaintiff's action is affirmed. The costs of the cause including the costs of the appeal are adjudged against the plaintiff Mrs. Adams.

It appearing that $94.74 was paid into the registry of the court, the cause is remanded to the Circuit Court for the proper disbursement of the fund under the order of the court.

Faw, P. J., and Felts, J., concur.