# INTERSTATE LIFE & ACCIDENT INSURANCE CO., Plaintiff in Error, v. MARY HOUSTON, Defendant in Error. —360 S. W. (2d) 71.

Western Section. June 29, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

Edward P. Russell, Jr., Memphis, Canada, Russell & Turner, Memphis, of counsel, for appellant.

Harry U. Scruggs, Jr., Memphis, Riley, Pritchard & Scruggs, Memphis, of counsel, for appellee.

BEJACH, J. ■ The sole question involved on this appeal from the Circuit Court of Shelby County is whether or not the appellant, Interstate Life & Accident Insurance Company, should be held liable to appellee, Mary Houston, for hospitalization from December 12, 1959 to March 11, 1960, under a policy which contains the following exception: "No benefits will be paid for hospitalization: (4) resulting from insanity."

For convenience, the parties will be referred to as plaintiff and defendant, Mary Houston having been the plaintiff in the lower court, and Interstate Life & Accident Insurance Co., the defendant.

The Circuit Court judge held the defendant liable and entered judgment against it for $1,000.25, from which judgment the defendant has appealed to this court. The cause was tried in the lower court without the intervention of a jury. The plaintiff, Mary Houston, a colored woman, about 46 years old, was employed by Mr. and Mrs. Jack L. Erb of Memphis, Tennessee, as cook and nurse. She had been so employed for about eleven years. She lived in the servants' quarters of their home place. Plaintiff was taken ill during the month of December 1959, and on December 22, 1959 she was hospitalized at the John Gaston Hospital, where she remained in the psychiatric ward of that hospital until January 4, 1960, at which time, she was removed to Gailor Psychiatric Hospital where she remained until March 11, 1960.

Plaintiff testified in her own behalf, and introduced three other witnesses, Mr. Jack L. Erb, her employer, Ed Houston, her husband, and Frank Bailey, her brother. The defendant introduced three witnesses, Mrs. Virginia Harper, keeper of the records at John Gaston Hospital, Augustine Davidson, keeper of the records at Gailor Psychiatric Hospital, and Dr. Edward R. Seiler, Senior Resident at Gailor Psychiatric Hospital, the last named of whom testified by deposition.

Plaintiff testified that she remembered going to the hospital, that she was taken there by her husband and her brother-in-law, and that she told them at the hospital that she was "nervous and tired". Mr. Erb testified that Mary was ill, and that he advised taking her to the hospital. He said, "She was ill your Honor, but we didn't know, or couldn't formulate, in our opinions, exactly what was Mary's trouble." When he was asked whether he could classify his employee's illness as "an organic illness or mental illness", he answered that he was not able to classify the illness.

Ed Houston, plaintiff's husband, testified that Mary, "Just taken sick", "I didn't know what was wrong so I called Mr. Erb and then they told me to take her to the hospital." * * *. "Just something unusual, I had never seen her act like that."

Frank Bailey, plaintiff's brother, testified that Mary frequently visited his home on weekends at Oakville, Tennessee, and that she appeared to be all right on those occasions. He accompanied plaintiff to John Gaston Hospital when she was admitted December 22, 1959, and stated with reference to that, that he thought she had a "nervous breakdown".

Dr. Edward R. Seiler, Senior Resident in Psychiatry at Gailor Psychiatric Hospital, testified that he saw plaintiff every other day while she was in Gailor Psychiatric Hospital. He said that his diagnosis of plaintiff's illness was "schizophrenic reaction, paranoid type". He defined schizophrenic reaction as "a loss of contact with reality, inability to think clearly, loss in trend of associations of thought, feelings of persecution." A paranoid, he said, "feels that he or she is being persecuted." Dr. Seiler said that from a psychiatric standpoint, the word "insanity" was previously used to include a wide variety of the more serious mental illnesses, especially psychosis. He said, however, that the term "sane" or "insane" is not used now in psychiatry, but that the divisions of psychiatry now are "neuroses and psychoses." He said that psychosis is a serious mental illness, and that plaintiff was seriously ill mentally. He said that psychosis embraces the more serious mental illnesses, one of which is schizophrenia, and that Mary Houston would be insane if that word were used to mean a severe mental illness. He said that when Mary Houston was first admitted to Gailor Psychiatric Hospital she was kept in a locked room, that she thought she was God, thought she had been crucified, thought people were taking babies away from her, that she was very disturbed, unmanageable, used profane language, and would not keep her clothes on, that she thought she was going to have a baby when she was not pregnant and had been through her menopause, thought people were going to take her children away, and had fits of crying and laughter.

Since the policy sued on in this cause expressly excludes payments for hospitalization "resulting from insanity", the question for us to decide, which is determina-

tive of this law suit, is whether or not plaintiff's hospitalization from December 22, 1959 to March 11, 1960, resulted from insanity, within the meaning of the policy. Webster's New International Dictionary, General Edition, defines insanity as follows:

"1. State of being insane; unsoundness or derangement of mind; madness; lunacy. Insanity takes so many forms that a satisfactory rigid or narrow definition cannot be made. It may be congenital, as idiocy (which see), or acquired. It does not include certain states of transitory mental disorder, such as trances, epilepsy, hysteria, delirium, etc. The four principal types are melancholia, mania, delusion insanity, and dementia. Insanity may be due to defective development, acquired disease, or natural decay.

" 'All power of fancy over reason is a degree of insanity.' Johnson.

"2. For legal purposes, as sometimes essentially defined: Such unsoundness of mental condition as, with regard to any matter under action, modifies or does away with individual legal responsibility or capacity, criminal or civil, differs from that by which insanity is determined for medical or psychological purposes, with the result that various conditions which are medically recognized as insane are not considered as doing away with legal responsibility or capacity. The rule which has been generally followed in criminal cases in Great Britain and the United States is that laid down in McNaughton's Case (10 Cl. and Fin. 200) as follows: 'To establish a defense on the ground of insanity, it must be clearly proved that at the time of the committing of the act,

the party accused was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or, if he did know, that he did not know he was doing what was wrong.'

''This rule does not absolve from criminal responsibility for acts done under the influence of an uncontrollable impulse, if the actor knows that the act done is morally wrong; but there is a tendency to recognize such an impulse as a sufficient defense in such a case as is done in some of the United States and in South Africa. The nature and degree of insanity required to affect a person's civil capacity varies with the nature of the case, the general test being as to whether with respect to the matter in hand, the person can act rationally, understanding the nature of his act and the natural consequences of it in affecting his rights, obligations and liabilities.

''3. Extravagant foolishness or folly or an example of it. Syn.—Insanity, lunacy, madness, derangement, alienation, mania, delirium, frenzy, monomania, dementia.''

Black's Law Dictionary defines insanity as follows:

''Unsoundness of mind; madness; mental alienation or derangement; a morbid psychic condition resulting from disorder of the brain, whether arising from malformation or defective organization or morbid processes affecting the brain primarily or diseased states of the general system implicating it secondarily, which involves the intellect, the emotions, the will, and the moral sense, or some of these faculties, and which is characterized especially by

their non-development, derangement, or perversion, and is manifested, in most forms by delusions, incapacity to reason or to judge, or by uncontrollable impulses. In law, such a want of reason, memory, and intelligence as prevents a man from comprehending the nature and consequences of his acts or from distinguishing between right and wrong conduct. Crosswell v. People, 13 Mich. 427, 87 Am. Dec. 774; Johnson v. [Maine & N. B.] Ins. Co., 83 Me. 182, 22 A. 107; Frazer v. Frazer, 2 Del. Ch. [260] 263.

" 'Insanity' does not include certain states of transitory mental disorder, such as trances, epilepsy, hysteria, and delirium. Martin v. Fraternal Reserve Life Ass'n, 200 Ill. App. 359, 364, and from both the pathologic and the legal definitions are to be excluded temporary mental aberrations caused by or accompanying alcoholic or other intoxication and the delirium of fever.

"The distinction between the medical and the legal idea of insanity has, perhaps, not been better stated than by Ray, who is quoted by Ordronaux, and again by Witthaus & Becker: 'Insanity in medicine has to do with a prolonged departure of the individual from his natural mental state arising from bodily disease.' 'Insanity in law covers nothing more than the relation of the person and the particular act which is the subject of judicial investigation. The legal problem must resolve itself into the inquiry, whether there was mental capacity and moral freedom to do or abstain from doing the particular act.' I Whitth. & Beck. Med. Jur. 181; U. S. v. Faulkner, D. C. Tex., 35 F. 730."

His Honor, the trial judge, was of opinion "that insanity means a complete condition of derangement as distinguished from mental illness;" and he concluded, therefore, that the plaintiff was merely suffering from a a mental disease, which did not disentitle her to recovery in the instant case. We cannot agree with this conclusion of the learned judge.

In the first place, since the insurance contract is not ambiguous, it is the duty of the courts to apply the words used in their ordinary meaning, and neither party is to be favored in that construction. Brown v. Tennessee Auto. Ins. Co., 192 Tenn. 60, 237 S. W. (2d) 553; Wallace v. State Farm Mutual Auto. Ins. Co., 187 Tenn. 692, 216 S. W. (2d) 697; Gilmore v. Continental Cas. Co., 188 Tenn. 588, 221 S. W. (2d) 814; Bowlin v. State Farm Mut. Auto. Ins. Co., 46 Tenn. App. 260, 327 S. W. (2d) 66. From the opinion of the Supreme Court, written by Mr. Justice Burnett in Wallace v. State Farm Mutual Auto. Ins. Co., we quote as follows:

"There is no ambiguity in the language used in the policy before us. Where the insurance contract is not ambiguous it is our duty to apply to the words used their ordinary meaning and neither party is to be favored in their construction. Seay v. Georgia Life Ins. Co., 132 Tenn. 673, 179 S. W. 312, Ann. Cas. 1916E, 1157. The well recognized rule of construing language of an insurance policy most strongly against the insurance company (the one who writes the policy), Pacific Mutual Life Insurance Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, does no permit us or cause us to create an ambiguity where none exists." Wallace v. State

Farm Ins. Co., 187 Tenn. 692, 701, 216 S. W. (2d) 697.

In Gilmore v. Continental Casualty Cas. Co., Mr. Justice Gailor, speaking for the Supreme Court, said:

"It is a familiar principle of construction that if the actual language and provisions of the document are plain and clear and are devoid of contradiction or any affirmative ambiguity, there is no judicial duty but to give the language its usual and ordinary meaning. Hickman v. Wright, 141 Tenn. 412, 210 S. W. 447; Moore v. Life & Casualty Ins. Co., 162 Tenn. 682, 40 S. W. (2d) 403; Inman v. Life & Casualty Ins. Co., 164 Tenn. 12, 45 S. W. (2d) 1073; United States Stove Corp., for Use and Benefit of Henderson v. Aetna Life Ins. Co., 169 Tenn. 264, 84 S. W. (2d) 582."

In Brown v. Tennessee Auto. Insurance Co., Mr. Justice Prewitt, now Chief Justice, speaking for the Supreme Court, said:

"The policy in question is a standard form and there is no ambiguity whatever in the endorsement or rider. Where there is no ambiguity, it is the duty of the Court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. The well recognized rule of construing language of an insurance policy most strongly against the insurance company does not permit or cause the court to create an ambiguity where none exists. Wallace v. State Farm Mut. Auto. Ins. Co., 187 Tenn. 692, 701, 216 S. W. (2d) 697." Brown v. Tennessee Auto. Ins. Co., 192 Tenn. 60, 63, 237 S. W. (2d) 553.

In Bowlin v. State Farm Mutual Automobile Insurance Co., Howard, J., speaking for the Court of Appeals, Eastern Section, said:

"In Standard Life Ins. Co. v. Hughes, [203] Tenn. [636], 315 S. W. (2d) 239, 243, our Supreme Court quoted with approval from Murphey v. Inter-Ocean Casualty Co., 98 Ind. App. 668, 186 N. E. 902, wherein the Indiana court said:

" 'Generally speaking, an exclusion clause cannot be used to create liability where none would otherwise exist. While we recognize and adhere to the rule that insurance contracts which are reasonably subject to conflicting interpretations are strictly construed against the insurer, yet, the construction should be a fair and reasonable one, and such as will be in accord with the language used in the contract itself. It does not seem reasonable that the parties to the contract intended or understood that, by the exclusion of injuries sustained under certain conditions, liability should be incurred if the insured was injured or killed while at a place where the insuring clause did not cover him.'

"The rule is well settled that where there is no ambiguity, it is the duty of the Court to apply to the words used their ordinary meaning, and neither party is to be favored in their construction. Brown v. Tennessee Auto. Ins. Co., 192 Tenn. 60, 237 S. W. (2) 553. Nor will the Court create an ambiguity where none exists. Wallace v. State Farm Mutual Automobile Ins. Co., 187 Tenn. 692, 216 S. W. (2d) 697." Bowlin v. State Farm Mutual Auto. Ins. Co., 46 Tenn. App. 260, 263-264, 327 S. W. (2d) 66.

Tried by the test of the above quoted authorities, it is our opinion that there is no ambiguity in the policy involved in the instant case, and that the hospitalization of plaintiff resulted from insanity, and, consequently, that defendant is not liable on the claim sued for. We agree with the contention of counsel for defendant, as set out in his brief, that industrial policies such as that here involved, must be written in language understandable to the policy holder; and that he understands (or should understand), that insanity is an illness treated by psychiatrists, which relates to the malfunction of the mind, as distinguished from illness of and injury to the body.

In the second place, we think that the learned trial judge should have been controlled in his decision by the testimony of Dr. Edward R. Seiler, the psychiatrist at Gailor Psychiatric Hospital, who saw plaintiff every other day while she was in that hospital, and whose diagnosis should have been controlling to the exclusion of the testimony of plaintiff's lay witnesses who had no similar opportunity for observing her during that period of time, and whose testimony is not really in conflict with that of Dr. Seiler. Under decisions of our court, if there had been a jury, it would have been the duty of the trial judge to grant a peremptory instruction in favor of the defendant. Since there was no jury in the instant case, it comes to us under the provisions of section 27-303, T. C. A. for trial de novo, with a presumption of the correctness of the judgment of the trial court, unless the preponderance of the evidence is otherwise. We think that the clear preponderance of the evidence is with the defendant.

In the case of American National Insurance Co. v. Smith, 18 Tenn. App. 222, 74 S. W. (2d) 1078, the Court

of Appeals, Eastern Section, reversed and dismissed a case where plaintiff had recovered on an industrial insurance policy which "contained a provision that no obligation was assumed by the company unless on the date thereof, September 7, 1931, the insured was alive and in sound health." The defense made was that the insured was not in sound health on said date, the insured having died on Septmeber 14, 1931 of peritonitis resulting from a gastric ulcer, and consequently that the insured was seriously afflicted with the ulcer on September 7, 1931, and therefore, was not in sound health on that date. Witnessees for plaintiff had testified that he appeared to be in good health, but the Court of Appeals, speaking through DeWitt, J., said:

"There is no conflict among the expert witnesses as to this fact of unsound health at the date of the policy. Dr. Rule, an expert introduced by the plaintiff testified on cross examination that the pathological condition—the ulcer—must have existed before the rupture, or puncture, although the patient did not know of it; and that one in the condition of the insured at the time of the operation must have had an unsound condition in his stomach for a considerable time theretofore. He testified that such rupture might result from any violent exercise, such as pushing a lawn mower, and that eating rough food, like a green pear, would have a tendency to cause an aggravation of the trouble, might be a causative factor. But the question does not depend upon the time or immediate cause of the rupture but upon the existence, at the date of the policy, of the ulcerated condition as constituting an unsound condition of health. This question did not lie within the common observa-

tion and experience of laymen. Looking alone to the lay testimony relied upon to support the verdict, and disregarding all to the contrary—positive lay testimony as to the insured's ill health for many antecedent months — we are yet unable to treat it as evidence. It is almost wholly negative in character. It is not based upon any result of medical examination or opinion. It rises no higher than the mere evidence of appearance of good health, some physical exertions, failure to complain of illness. It does not conflict with a fact of the existence of a dangerous ulcer on September 7, 1931. It is but the facts which a lay witness details as to such matters, the appearance and conduct which he describes, which chiefly and primarily constitute his testimony as evidence of any substantial value. Fitch v. [American] Trust Co., 4 Tenn. App. 87.

\* \* \* \* \* \*

"Ordinarily, the value of an expert's opinion is for the jury to determine; and this would apply in the instant case to the testimony given in answer to hypothetical questions. But the testimony of certain of these physicians was positive, direct, not mere opinion, as to the existence of the ulcer on the date of the policy. In Bennett v. Fail, 26 Ala. 605, it was held that an opinion of the medical expert as to the length of time a disease has existed, based upon personal examination, should not be discredited by the court by a charge that the testimony of such physician is a matter of opinion only. We deal here with a hidden disease, the very symptoms of which would not be apparent to a layman. When the case concerns a highly specialized branch of medical science, with

respect to which a layman could have no knowledge (as to the length of the prior existence of an ulcer which had ruptured), the court must depend upon expert testimony; and, in such case, the absence of substantial evidence to the contrary, it is improper to submit the issue to the jury. Vaughan v. Oliver, 3 Tenn. App. [559] 566; Ewing v. Goode (C.C.) 78 F. 442, 444; Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032; Clark v. State, 12 Ohio 483, 40 Am. Dec. 481.

"The testimony of these physicians must therefore be deemed conclusive. The appellate court does not weigh evidence in a cause tried to a jury, according to its preponderance, but must and does determine whether or not the evidence relied on to support the verdict is substantial in itself—has fitness to induce conviction. The facts detailed by the lay witnesses in this cause are not after all in conflict with the testimony of the physicians, for they relate only to the external things which existed contemporaneously with the disease.

"The undisputed, material, determinative evidence warrants only the conclusion that Laurence M. Smith was not in sound health at the date of the policy, and therefore there can be no recovery upon the policy." American National Insurance Co. v. Smith, 18 Tenn. App. 222, 227-228, 74 S. W. (2d) 1078.

In Adams v. Manhattan Life Insurance Co., 24 Tenn. App. 171, 141 S. W. (2d) 930, the insurance company defended on the ground that the insured had answered falsely questions in the application as to whether he had been rejected by other insurance companies, whether he had certain diseases, and whether he had been treated

by physicians within the past five years; and that this policy was therefore procured by fraud. The lower court's judgment for defendant was affirmed. From the opinion of the Court of Appeals, Middle Section, written by Crownover, J., we quote as follows:

"The uncontroverted evidence is that Adams knew that he had had syphilis and heart disease and had been treated by physicians for both before he signed this application, as he asked the doctor to cure him of these diseases so that he might obtain insurance.

"His wife denied that he had syphilis, gonorrhea, and heart disease, but she did not deny that he had been treated for these diseases. However, her testimony on these diseases is only the testimony of a layman and is not entitled to any weight as against medical expert testimony.

" 'We deal here with a hidden disease, the very symptoms of which would not be apparent to a layman. When the case concerns a highly specialized branch of medical science, with respect to which a layman could have no knowledge * * *, the court must depend upon expert testimony; and, in such case, in the absence of substantial evidence to the contrary, it is improper to submit the issue to the jury. Vaughan v. Oliver, 3 Tenn. App. (559), 566; Ewing v. Goode (C. C.) 78 F. 442, 444; Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032; Clark v. State, 12 Ohio 483, 40 Am. Dec. 481.' American Nat. Ins. Co. v. Smith, 18 Tenn. App. 222, 227, 228, 74 S. W. (2d) 1078, 1081; Standard Life Ins. Co. v. Strong, 19 Tenn. App. 404, 89 S. W. (2d) 367; National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 80 S. W.

(2d) 92.'' Adams v. Manhattan Life Ins. Co., 24 Tenn. App. 171, 141 S. W. (2d) 930.

In the third place, we think the General Assembly of the State of Tennessee has foreclosed the question for us and in favor of the contentions of defendant. Title 33, which deals with ''Insane and Mentally Deficient Persons'', same being Chapters 1 through 12, sections 33-101 through 33-1214, T. C. A., as same existed in 1957, contained at numerous places therein the terms ''insane'' and ''insanity''; but Chapter 127, Public Acts of 1957, enacted March 8, 1957, amends said title 33 of the Tennessee Code Annotated, sec. 33-100, as follows:

''(a) Wherever the term 'insane' shall appear, [in said title] the term 'mentally ill' shall be substituted therefor.

''(b) Wherever the terms 'insanity' or 'lunacy' shall appear, the term 'mental illness' shall be substituted therefor.''

It thus appears to us that by legislative enactment, the terms ''insanity'' and ''mental illness'' are made synonymous with each other. There can be no question on the evidence before us in the instant case, even when taken most strongly in favor of the plaintiff, that the hospitalization of plaintiff, Mary Houston, resulted from mental disease, which, in turn, must be treated as the equivalent of insanity. Such being the case, under the clear and unequivocal terms of the policy sued on, the defendant insurance company is not liable.

It results that the judgment of the lower court in favor of the plaintiff and against the defendant will be reversed and dismissed at the cost of the plaintiff, Mary Houston.

Avery, P. J. (W. S.), and Carney, J., concur.